JEMISON *vs.* BLOWERS and others.

,venant for quiet enjoyment, contained in a deed, is discharged by a certificate in bankruptcy, where the breach happens after the filing of the petition upon which the certificate is granted.

The claim of the grantee, upon such a covenant, before breach, is a "contingent demand" against the grantor, provable under the second clause of the fifth section of the bankrupt act.

DEMURRER to pleas. The defendants, by deed dated August 28, 1841, containing the usual covenants of warranty and for quiet enjoyment, conveyed to the plaintiff a piece of land in Gainesville, Wyoming county. On the 1st day of March, 1843, the plaintiff was evicted by title derived under a mortgage, which was an incumbrance on the land at the time of the conveyance. And the action was brought on the covenant in the deed, to recover the damages for the eviction. The defendants pleaded discharges in bankruptcy obtained Nov. 6, 1843, upon petitions filed July 4, 1842. To these pleas the plaintiff demurred, and the defendants joined in demurrer.

---

Jemison *v.* Blowers.

---

*L. W. Thayer*, for the plaintiff.

*J. R. Doolittle* for the defendant.

*By the Court*, SILL, J. The point presented in this case is whether a covenant for quiet enjoyment is discharged by a certificate in bankruptcy, when the breach happens after the petition is filed upon which the certificate is granted. No other question was made on the argument, and I shall not inquire whether the plea is in other respects sufficient. The certificates in terms declare the persons to whom they are granted discharged from all debts, contracts, and engagements, existing at the time of filing their petitions, and relate back to that period. I shall therefore lay out of view the fact that the covenant was broken and the liability upon it rendered absolute before the defendants actually obtained their certificates, and inquire whether the claim on the covenant, before breach, was a "contingent demand" provable under the act.

Section four of the bankrupt law provides that the "discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all *debts, contracts and other engagements*, of such bankrupt, provable under this act," &c. Section five provides first, that " *all creditors* coming in and proving their debts under such bankruptcy in the manner herein prescribed, the same being *bona fide debts*, shall be entitled to share in the bankrupt's estate," &c. The fifth section then further declares, that " all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, endorsers, bail, or *other persons having uncertain or contingent demands* against such bankrupt, shall be *permitted to come in and prove such debts or claims* under this act, and shall have a right where these *debts and claims have become absolute*, to have the same allowed them. And such annuitants, and holders of debts payable in futuro, may have the present value thereof ascertained under the direction of the court, and allowed them accordingly as

debts in presenti." These extracts from section five, (which for present convenience, I shall designate the first and second clauses,) embrace all that the act contains, declaring what claims may be proved under it. The first clause allows all persons, having absolute debts against the bankrupt, to prove them, and participate in the proceeds of his estate, and all such debts are confessedly barred by a certificate, whether proved or not, unless they are fiduciary in their character.

Under the first clause, by the settled construction given to similar provisions in the bankrupt laws of England, and the act of congress of 1800, none of the claims enumerated in the second clause of section 5, were provable, among which the claim in question must be classed if provable at all under the act. What is meant by a contingent demand, and whether that term is properly applicable to the demand in question here, is the point presented for decision.

In no other bankrupt act do we find any provision corresponding fully with the second clause of section five of the act of 1841. And to give that clause a liberal construction, will bring within its purview a large class of cases not embraced by any former act relating to bankruptcy, and which have heretofore been excluded, not only by judicial construction, but as was supposed by the policy which governed legislators in framing acts on this subject. These considerations have caused some hesitation before giving our law that comprehensive interpretation, which its language and some of its peculiar provisions would seem to justify. Under the English bankrupt laws and the former law of the United States, unliquidated demands, though arising upon a contract, were not provable. The exclusion of such claims as those even for torts, was not put upon the ground that persons whose demands were liquidated, had stronger equitable claims upon the bankrupt's estate, but upon the ground that they were not within the terms of the act, and that no mode was provided for liquidating uncertain demands, and all were excluded which required, in order to fix the amount, the intervention of a jury. Judgments were always provable, no matter upon what grounds the re-

covery was had, or whether the liability originated in a matter beneficial to the estate or not. (*Ex parte Hill,* 11 *Ves.* 646.) And when a right of action for seduction existed, and being liquidated and settled by the notes of the party charged, they were admitted to proof. (*Ex parte Mumford,* 15 *Ves.* 289.) As has been remarked, those demands uncertain in amount were excluded, either because they were not within the terms of the law, or because no mode was provided for their liquidation ; or for both these reasons. The first of those objections is rendered, to a great extent, if not entirely, inapplicable to the law of 1841, by the broad terms of the second clause of section five. And the second is obviated by a provision in section seven, by which the amount, as well as the existence of a claim, may, at the instance of a creditor, or of the assignee in bankruptcy, be settled by a jury.

These new and peculiar provisions admonish us of the extended operation the act of 1841 was designed to have upon the liabilities of a bankrupt, and show that adjudications under former acts will afford us little aid in coming to a correct conclusion on the question now before us. It is however said, that the 56th section of the act of 6 Geo. 4, is much like the provision we are considering ; and we have been referred to some decisions giving construction to that section, which it is claimed may apply to this case. The section of the English act referred to is as follows : " Debts payable upon a future contingency which has not happened before the issuing of the commission, may be proved and the amount and value being ascertained by the commissioners, or if the value has not been ascertained before the happening of the contingency, the creditor may, after the contingency has happened, prove in respect of the debt and receive dividends with the other creditors, not disturbing former dividends," &c. The English courts have decided that a debt, payable upon a contingency which has not happened, is not provable under this section, because the debt *with* the contingency is not susceptible of valuation. (1 *Montagu,* 44, 141. 1 *Mont. & McArthur,* 415, 422. 1 *Deac.* 115. 4 *Adol. & Ellis,* N. S. 386. 2 *Scott,* 266. 9 *B. & C.* 145.) The English act

*Jemison v. Blowers.*

is thus rendered in part inoperative, upon the ground that it cannot, in the mode prescribed for administering it, be carried out upon any known legal principle. These cases, however, are not applicable to our statute. Under it the present value of annuities and *absolute* debts payable at a future day, is to be ascertained, and this can be done upon well known principles. But with the English law, and at least a part of the above decisions upon it before them, congress have obviated the difficulty experienced there, and have provided that contingent debts and claims are to be proved as though they were absolute, and after the happening of the contingency which makes them so, the creditor shall receive his dividend.

But the inconvenience of administering the law upon this principle is urged as an argument against this construction. We are told that its application to a case like the present might tie up the bankrupt's estate twenty years, before it would be known whether the claim proved contingently would become absolute, so as to entitle the claimant to a dividend, or the other creditors to a distribution.

We are also referred to section 10, which declares that all proceedings in bankruptcy shall be brought to a close if practicable within two years after the decree declaring the petitioner a bankrupt. The design of this provision undoubtedly was to admonish courts and suitors that all practicable diligence should be used in bringing such proceedings to a termination. But it was not contended, nor indeed could it be, that it was to operate as an absolute limitation of proceedings in bankruptcy. This clause, when read with the whole section, is merely declaratory of the rights of parties to have each case brought to a close with all the expedition practicable, under its peculiar circumstances; but its terms are not, nor is its spirit, inconsistent with any delay which a compliance with other parts of the act may render necessary, or which may be proper to secure or protect the just rights of the bankrupt, or any creditor. Should the case happen which has been supposed by way of argument, and which would be likely to produce such extraordinary delay in the final settlement of the bankrupt's estate, we might, were

Jemison v. Blowers.

there no other answer to the objection, inquire whether the court would not have the power to distribute the burden of the estate, and still in some method preserve the rights of the contingent claimant.  Without pursuing the inquiry it is proper to observe that the case supposed is an extreme one, which by possibility might happen, but still is most unlikely to occur; and it has never been considered a safe rule for construing a law, to look only at its operation upon imaginary or improbable cases, to the exclusion of those likely to arise, and more probably in view of the legislature in passing it.  But the conclusive answer is that the argument applies not only to this case, but with equal force to others, confessedly within the second clause of section five.   Sureties, it must be conceded, may prove against their principals who become bankrupts, before payment; and when such claims become absolute, or, in other words, when they have been compelled to pay, they may receive a dividend.  It is not an unusual thing that bonds are given, with sureties, where the liability remains ten or fifteen years; and it is no more extravagant to assume that the claims of sureties will remain contingent upon such a bond fifteen or even twenty years, than to suppose that twenty years will elapse before the grantee of land will be disturbed, where there is an outstanding incumbrance upon it paramount to his title.   The same character of objection would apply to almost every case enumerated in the second clause of section five, though perhaps not to the same extent.   The argument therefore proves too much.   If allowed to control the construction of this section, it would exclude many cases within the express terms and admitted meaning of the statute.

It is also contended that the right of a covenantee, upon a covenant for quiet enjoyment, does not before breach amount to a demand in law, even contingent—that no right in fact exists upon it.  The word demand, Lord Coke says, is a word of extent in signification, greater than any other word except claim; and by a release of "all demands, a *warranty*, which is a covenant real, and all other covenants, personal and real, estovers, all commons and profits, appender, and conditions,

Jemison *v.* Blowers.

before they be broken or after, are released and discharged." (3 *Coke by Thomas,* 427.) In a release it seems the word demand, *without qualification,* would include the covenant upon which this suit is brought though not broken.

The legal definition of the word contingent, when applied to various legal rights and interests, can leave but little doubt of its true meaning here. " A *contingent use* is such as may by *possibility* happen in possession, reversion or remainder. (1 *Coke, Thomas'* ed. 121. *Comyn's Dig.* tit. *Uses, K.* 6.) " A contingent remainder is a remainder limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event, so that the particular estate may chance to be determined and may never take effect." (*Jacob's Law Dict.* tit. *Remainder.* 1 *Coke's Rep.* 30. 2 *Comyn,* 169. 10 *Coke,* 85.) The word *contingent,* when applied to a use, remainder, devise, bequest, or other legal right or interest, implies that no present interest exists, and that whether such interest or right ever will exist depends upon a future uncertain event. (*See the cases above cited giving construction to the 56th sec. of* 6 *Geo.* 4.) The legal definition of the word concurs with its ordinary acceptation in showing that the term contingent implies a possibility. The term " contingent demand" would therefore be inapplicable where a present claim exists, or where it is certain to arise in future; and is only appropriate when there is no claim *in presenti,* and when it is uncertain whether any in fact will ever arise.

It seems to me that the grantee of land which at the time of the grant is subject to incumbrances which may defeat it, has before eviction a contingent demand against his grantor upon the covenants for quiet enjoyment in his deed, and that such a demand is provable under the second clause of the fifth section of the bankrupt act.

It is also urged that the plaintiff's claim in this case not having been *actually proved* in bankruptcy, it is not barred; and we are referred to the case of *Wells* v. *Mace,* (17 *Verm. Rep.* 503,) which is applicable to the point, and, if sound law, goes far to sustain it. Wells signed the note of Mace as surety,

after which Mace obtained his certificate in bankrupty.    After Mace's discharge Wells paid the note, and brought his action against Mace for money paid to his use.    It was there held that the action was not barred.    In speaking of that part of section five which I have called the second clause, the court say it is permissive, and not compulsory upon the creditors referred to in it; its terms being that the creditor " shall be permitted to prove his claim and not compelled to do so, leaving it optional with him to prove his claim and take his share of the bankrupt's effects, with the other creditors, or to postpone his claim until it becomes absolute by his being compelled to pay and then taking his chance of collecting it of the bankrupt after he has parted with his property."    After a careful examination of this question, I have been led to a different conclusion.    The principle of the construction laid down in *Wells* v. *Mace* extends to all the cases enumerated in the second clause of section five, and according to that case none of them are discharged unless actually proved.    It will be observed that independently of this clause *debts* only are provable.    By virtue of the second clause alone are *contracts* and *engagements* as distinguished from debts provable, and the fourth section discharges not only debts, but all contracts and engagements provable under the act.    The words " contracts and engagements" in the fourth section must refer, therefore, to the obligations enumerated in the second clause of section five.    Otherwise they are at least redundant, if not entirely without meaning.

It is said that creditors are not, under the second clause, compelled to prove their claims, but are "*permitted to do so*," and from the phraseology an argument is drawn in *Wells* v. *Mace,* favorable to the conclusion there adopted.    But the law is permissive only to those having absolute debts.    Proof is prescribed as a proceeding preliminary and conditional to the privilege of participating in the bankrupt's estate.    It is nowhere and upon no class of creditors imposed as a duty.    And I am unable to see, in the expression referred to, any evidence of an intention to place the creditors enumerated in the clause where it is used

Jemison v. Blowers.

on a footing in this respect different from those referred to in the preceding clause.

In the unreported case of *Campbell* v. *Perkins*, decided by this court at the February general term in Erie county, in 1848, it was held that a demand for damages for a breach of a contract of a common carrier was barred by a certificate in bankruptcy. It did not appear that the claim had been proved in the bankruptcy proceeding. And although the question was not much argued in that case, I am of the opinion that it was correctly decided.

There must be judgment for the defendants, with leave to the plaintiff to amend upon payment of costs.

*Note.* Since the foregoing opinion was written, I have learned that the judgment of the supreme court of Vermont, in *Wells* v. *Mace,* has been reversed by the supreme court of the United States. (*See* 7 *Howard, p.* 172.)