## MOSES ELLIS *v.* CHARLES B. POLHEMUS, ADMINISTRATOR OF THE ESTATE OF H. P. JANES, DECEASED.

RATE OF INTEREST ON CLAIMS AGAINST INSOLVENT ESTATES.—If the estate of the deceased is insolvent, the administrator cannot pay more than ten per cent interest per annum, from and after the time of issuing letters, on any claim against the estate contracted after May 20th, 1861, even if the rate of interest specified in the contract is more than ten per cent per annum, and the claim is secured by a mortgage.

CLAIM AGAINST AN ESTATE.—*Per Sanderson, C. J.*—The word "claim" as used in the Act concerning the estates of deceased persons, when it speaks of claims against an estate, is broad enough to include a mortgage.

CASES COMMENTED ON.—The cases of *Fallon* v. *Butler*, 21 Cal. 24, and *Ellissen* v. *Halleck*, 6 Cal. 386, and *Faulkner* v. *Folsom's Executors*, 6 Cal. 412, commented on.

*Per Rhodes, J.*—A note secured by mortgage is a claim against the estate, but the mortgage given to secure the note is not such claim.

*Per Shafter, J., Sawyer, J., concurring.*—The word "claim," as used in the one hundred and thirty-first section of the Act concerning the estates of deceased persons, includes mortgages as well as claims at large against the estate.

APPEAL from the Probate Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Mastick & Gray*, and *John T. Doyle*, for Appellant.

The question presented is simply whether the Act of May 20, 1861, section forty, (Laws, p. 637,) applies to such a case as this or not. The words of the statute are broad enough to cover it, if such was clearly the intent; and, on the other hand, no violence will be done to the words of the Act by excluding it, if such was not the intent. The meaning and intent, then, of that amendment to the Probate Act are what we have to ascertain. To arrive at the true intent of the amendment here in question, we must read it in connection with the rest of the Act, and the decisions of this Court expounding and interpreting its other parts. The question naturally resolves itself into a consideration of the import of the words "*claim against the estate*," and the term "*insolvent*," as used in this Act. Is a mortgage or lien on specific property a "claim against the estate" within the meaning of this Act? Is the estate of the deceased "insolvent" *quoad* this

claim within the meaning of the Act? These are the questions.

A mortgage is not a claim against the estate, because it may be and frequently is *less* than a claim. For example : A mere dry mortgage, not founded on or collateral to a debt to be paid, but simply a mortgage of the land conditioned for the payment of so much money, for which there is no personal promise. Suppose the appellant's mortgage had been of this character—he would not have had a claim against the estate, for he would not have had a right to receive from the administrator anything save out of the proceeds of the land mortgaged. Suppose a note secured by mortgage, and the mortgagee afterwards releases the personal liability of the mortgagor, agreeing to look to the land alone for his payment; in such case, if the mortgagor dies insolvent, the mortgagee's right to his interest cannot be affected; because, by express contract, he has renounced and released all claims against the deceased, his heirs, executors, and administrators. If the learned Judge below was right in his decision, it would appear to follow as a corollary from it, that an administrator would have no right to accept a release of the personal liability of the deceased on a debt secured by a mortgage, or that in doing so he took the risk of the solvency of the estate. If this be so, it is about the only imaginable case wherein a *release* would, in effect, become a cause of action in favor of the releasor against the releasee.

The decision of the Supreme Court in *Fallon* v. *Butler*, 21 Cal. 24, is, in our judgment, conclusive of the question here involved. The meaning of the words, "claim against the estate," as used in the Probate Act, are there examined, and it is held that they are to be deemed synonymous with "debts and demands against the decedent, *which might have been enforced against him in his lifetime by personal action for the recovery of money, and upon which only a money judgment could have been rendered.*"

*W. H. L. Barnes*, for Respondent.

It is urged that this claim is not subject to the provisions of section one hundred and thirty-one of the Probate Act, because it is a claim which was secured by mortgage, and did not run against the body of the estate in the first instance; that, therefore, it is not a claim against the estate within the meaning of the Probate Act.

Nothing can be found in the Probate Act itself to justify this view. In providing the mode in which claims against estates shall be presented and allowed, it makes no distinction between secured and unsecured claims, except that it requires, in the case of a claim secured by mortgage of real estate, a description of the security, and a reference to the date, volume, and page of its record in the office of the County Recorder of the county where the land mortgaged lies. (Probate Act, §133.) This being done, and the claim having been allowed, approved, and filed, it is ranked among the acknowledged debts of the estate, to be paid in the due course of administration. (Ib.) The claim, thus filed, may be paid as a claim against the body of the estate in the due course of administration, and the lien discharged or released, as would of course be the proceeding in a solvent estate; or, if a sale is made of land subject to mortgage, or other lien, which is a valid claim against the estate of the deceased, the purchase money shall be applied, after paying the necessary expenses of the sale, first, to the payment and satisfaction of the mortgage or lien, and the residue in the course of administration. (Ib. §186.) So that, so far as the Probate Act is concerned, there is no discrimination between unsecured and secured debts; both are claims against the estate and the whole of it, save that the secured debt shall have the proceeds of the security applied to its payment, if the security is sold. The secured debt is still a *claim* against the estate, having rights as to a specific portion of it in certain contingencies, but which, it is presumed, will be paid in the due course of administration. The presentation, allowance, and filing of such a claim are not steps to foreclose a specific lien on a part of an estate in the control of the Probate Court, with no reference to anything but the

lien and its foreclosure. These acts simply place such claim before the Court, precisely as any other. The language of the section in question (§131) is very broad, "broad enough to cover the present case, if such was clearly the intent," say the learned counsel on the other side. We may add to this that while the statute is broad enough to cover this case, there is no provision to be found which takes the case out of the operation of the rule so broadly laid down.

By the Court, SANDERSON, C. J.

On the first day of April, 1862, Horace P. Janes gave to Moses Ellis his promissory note for twenty-five thousand dollars, payable one year from date, with interest at the rate of one and one quarter per cent per month, payable monthly; and to secure its payment gave a mortgage on certain real estate in the City of San Francisco. Janes died before the note matured. It was duly presented to the administrator of the estate of Janes, was allowed by him, and approved by the Probate Judge, and thereupon filed in the Probate Court, on the 12th of August, 1863, as a valid claim against the estate.

The administrator paid the interest on the claim, at the rate of one and one quarter per cent per month, to December 28, 1863. Subsequent to the last payment of interest, the administrator sold the mortgaged premises, and the proceeds of the sale were more than sufficient to pay the debt and interest at the rate specified in the note. Whereupon Moses Ellis filed his petition in the Probate Court, and sought to compel the administrator to account for his proceedings in the matter of the sale, and to pay to the petitioner twenty-five thousand dollars, with interest at the rate of one and one quarter per cent per month from the 28th day of December, 1863.

The foregoing facts were admitted by the administrator; but it further appeared that the estate of the deceased was insolvent; and that the fact of such insolvency was not discovered by the administrator until the 6th day of January, 1864. The Court ordered the administrator to pay the peti-

45

tioner twenty-five thousand dollars, with interest at the rate of ten per cent per annum only, from the date of the letters of administration, to wit: November 9, 1862, less all sums of money which had been paid as interest since that day. The petitioner appealed, and now claims that the Court below erred in holding that he was entitled to ten per cent per annum only instead of one and one quarter per cent per month according to the terms of the note.

The one hundred and thirty-first section of the Probate Act provides, among other things, that "In case the estate is insolvent, no claim contracted after the passage of this Act shall bear greater interest than ten per cent per annum from and after the time of issuing letters." The foregoing became a part of the law of the land on the 20th of May, 1861—nearly a year before the note and mortgage in question were made.

But it is insisted that this note is not a claim within the meaning of the foregoing provision, and is not subject to it, because it is secured by mortgage, and therefore does not run against the body of the estate in the first instance; and in support of this view the case of *Fallon* v. *Butler*, 21 Cal. 24, is cited. Whether that case states the law as correctly as *Ellissen* v. *Halleck*, and *Faulkner* v. *Folsom's Executors*, 6 Cal. 386 and 412, which it overrules, admits of serious doubt. The meaning of the word "claim" is broad enough to embrace a mortgage or any other lien, and in the one hundred and eighty-sixth section of the Act, mortgages and other liens are expressly mentioned as valid claims against the estate. This section received no special notice, though it was cited in the brief of counsel, at the hands of the Court in *Fallon* v. *Butler*, yet it seems to have a very significant bearing upon the question there discussed and determined. But be that as it may, it is clear that *Fallon* v. *Butler* does not decide that a note when secured by a mortgage is not a claim against the estate. On the contrary, it goes no further than the naked lien of the mortgage, which, for the purposes of the question then before the Court, was regarded as something "distinct" from the note, and I am not disposed to extend the doctrine of that case

beyond its exact limits. The word " claim" is not only broad enough to include a mortgage, but if there was any doubt upon that point it would seem to be removed by the language of the one hundred and thirty-third section, which provides that "if the claim be founded on a bond, bill, note or *other instrument*, the original shall be presented," etc. This language was added to the section in 1861. When the case of *Fallon* v. *Butler* was tried in the Court below does not appear from the report, and it is possible that it was tried before section one hundred and thirty-three was so amended.

The note in question was presented for allowance to the administrator and the Probate Judge, and thereupon filed in the Probate Court. It was a valid claim against the estate, and having been allowed and filed, took rank, in the language of section one hundred and thirty-three, " among the acknowledged debts of the estate, to be paid in due course of administration," under the direction of the Probate Court. The estate being insolvent, this claim, as well as all others, became subject to the provisions of section one hundred and thirty-one, and the petitioner only entitled to interest at the rate of ten per cent per annum, from and after the date of the letters of administration, and there was no error on the part of the Court in so holding.

*Per* RHODES, J., concurring specially.

I concur in the judgment affirming the order of the Probate Court; and I agree with the Chief Justice in the opinion that a promissory note, executed by the deceased in his lifetime, whether it is secured by a mortgage or not, is a claim against the estate; but, in my opinion, the mortgage, which is but a security for the payment of the note—a mere incident to the debt—is not, in any just sense, a claim against the estate to be presented for payment.

The mortgage debt is required to be presented for payment, and when paid either by the administrator or on proceedings to foreclose the mortgage, it operates as a satisfaction—not

payment—of the mortgage. The mortgage or an abstract thereof may be required to be filed in the Probate Court with the debt, for the purpose of enabling the Court to make the proper order for the payment of the claims, and give the requisite preference to liens upon any of the assets of the estate. The statute as amended in 1861 (Probate Act, Sec. 133) seems to recognize the distinction between a claim and its security, for it says : "If the claim or any part thereof be secured by a mortgage or other lien, such mortgage or other evidence of lien shall be attached to the claim and filed therewith, unless the same be recorded," etc.

The provisions of this section may at first view seem to conflict with section one hundred and eighty-six, where provision is made for the appropriation of the proceeds of the sale of "land subject to any mortgage or other lien, which is a valid claim against the estate of the deceased," but the apparent conflict vanishes when it is remembered that a mortgage is not, in fact, a debt against the estate. The meaning and evident intent of the Legislature was to provide for the appropriation of the purchase money arising from the sale of "lands subject to any mortgage or other lien [given to secure the payment of a debt] which is a valid claim against the estate of the deceased," etc. It is further provided in the section that the money arising from the sale of the land, after the payment of the expenses, shall be first applied to the payment of the mortgage or lien, meaning, of course, the debt, the claim secured by the mortgage or other lien.

The judgment affirming the order of the Probate Court, directing that the note should bear interest at the rate of ten per cent per annum from the date of the letters of administration, does not conflict with the opinion of the Court in *Fallon* v. *Butler*, 21 Cal. 24, which holds that a mortgage is not a claim in the sense in which that term is employed in the Probate Act. The note was filed as a claim against the estate, and payment was sought from the administrator out of the general assets of the estate, and as the note was made after the passage of the amendments of 1861, and the estate was

insolvent, the note must be subject to the same rule, in respect to the interest to be paid, as other notes filed as claims, which are to be paid by the administrator in due course of administration.    Although such is the law in respect to the note and the interest to be paid, in case the estate is insolvent, I see no inconsistency in holding at the same time that the mortgage is not a claim against the estate, and that an action may be brought in the District Court for the enforcement of the mortgage lien by a foreclosure and a sale of the premises for the payment of the debt and interest, but what rate of interest, I do not undertake to determine.

*Per* SHAFTER J., SAWYER J., concurring.

There is, in my judgment, no ambiguity affecting the word " claim " as used in the one hundred and thirty-first section of the Probate Act.    However it may be in other sections, still in that section it is not limited to claims against the estate at large, as distinguished from claims secured by mortgage upon a part or upon the whole of it.    The substance of the provision is that all claims having their origin in contract shall draw only ten per cent per annum, after letters of administration have been issued, if the estate of the decedent shall have been insolvent.    The appellant in this case had two distinct claims—the note and the mortgage—and as each of them had its origin in contract, both of them are within the scope of the word " claim" as limited in the section ; and whether considered severally, or in their relations to each other, they are directly within the ten per cent provision of the section ; and as no other question than that has been raised by counsel for our consideration I concur in the affirmance of the order, on the ground stated in this opinion.