[No. 13086.   In Bank. — November 22, 1892.]
GASTON VERDIER ET AL., APPELLANTS, v. PHILIP
A. ROACH, ADMINISTRATOR, ETC., RESPONDENT.

ESTATES OF DECEDENTS — PRESENTATION OF CLAIMS — CONTINGENT CLAIMS
— UNCERTAINTY OF AMOUNT. — Since the amendment of 1880 to section
1493 of the Code of Civil Procedure, all contingent claims which are
provable and payable at any time must be presented to the executor or
administrator of the estate of a decedent within the time limited in the
notice to creditors, or such claims are barred forever, although the
amount of the claim cannot be ascertained within the ordinary period of
administration.

ID. — COVENANT TO INDEMNIFY LESSEES — BREACH AFTER TIME FOR PRES-
ENTATION OF CLAIM. — A covenant made by a lessor of real estate to
indemnify the lessees, and save them harmless during the term of the
lease, from one half of all the damages which they may sustain by the
leaking or overflow of water upon their goods in the building, caused by
any occupant of any part of the building other than that demised, must
be presented as a contingent claim to the administrator of the deceased
lessor within the time limited by notice to creditors, or any action for
breach of it is forever barred, though there may be no breach thereof
until more than two years after the expiration of the time so limited.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco.

The facts are stated in the opinion.

*Gustave Touchard*, and *Pillsbury, Blanding & Hayne*,
for Appellants.

*Naphtaly, Freidenrich & Ackerman*, and *John A. Wright*,
for Respondent.

The COURT. — When this cause was pending in De-
partment One, the following opinion was prepared by
Commissioner Vanclief. After full consideration in
Bank, we are satisfied with that opinion and with the
conclusion therein reached; and for the reasons therein
given, the judgment is affirmed.

"VANCLIEF, C. — On the twelfth day of November,
1881, Thomas H. Blythe leased to the plaintiffs the first
story, or ground-floor, of a building in San Francisco, to ·
be occupied as a store for the term of nine years and

ten months. The lease contained a covenant on the part of the lessor to indemnify the lessees, and save them harmless during the term, from one half of all damages and loss which they might sustain by the leaking or overflow of water upon their goods in the building, caused by any occupant of any part of the building other than that demised to them. In September, 1882, plaintiffs entered into possession of the demised part of the building under the lease, and stored their goods therein. On April 4, 1883, Blythe died. On June 12, 1883, Roach was appointed administrator of Blythe's estate, and, as such, on June 23, 1883, commenced the publication of notice to the creditors to present and exhibit their claims against the estate within ten months thereafter, which publication was continued and completed as required by law, but during the period of ten months no claim of any kind was presented by plaintiffs. In 1886, more than two years after the expiration of the period of ten months had expired, the plaintiffs sustained damages in the sum of $3,321.10, by a leak and overflow of water, caused by an occupant of a portion of the building other than that demised to plaintiffs, and thereupon they demanded of Roach, as administrator, payment of one half of the damages thus suffered by them, viz., $1,660.55, which he refused to pay, and this action was commenced to recover the same.

" The court found the facts substantially as above stated, and gave judgment for the defendant, solely upon the ground that the plaintiffs had failed to present to the administrator any claim upon the covenant in the lease during the period of ten months after publication of notice to creditors.

" Plaintiffs bring this appeal from the judgment upon the judgment roll, and contend that, upon the findings of fact, the judgment should have been for plaintiffs.

" Was it necessary to a recovery by the plaintiffs that they should have presented to the administrator a claim against the estate, upon the covenant in the lease, dur-

ing the prescribed period of ten months?—is the principal question presented for decision.

" Section 1493 of the Code of Civil Procedure provides that 'all claims arising upon contracts, whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever; provided, however, that when it is made to appear by the affidavit of the claimant, to the satisfaction of the court, or a judge thereof, that the claimant had no notice as provided in this chapter, by reason of being out of the state, it may be presented at any time before a decree of distribution is entered.'

" Section 1500 provides that 'no holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except' an action to enforce a mortgage or lien, etc., where all recourse against any other property of the estate is expressly waived in the complaint.

" Section 1493 is the code substitute for section 130 of the late Probate Act, which provided that ' if a claim be not presented within ten months after the first publication of the notice, it shall be barred forever; provided if it be not then due, or if it be contingent, it may be presented within ten months after it shall become due or absolute.' As affecting contingent claims, this section of the Probate Act was construed, to a certain extent, in *Pico* v. *De la Guerra*, 18 Cal. 428, where it was said: 'We see in section 130 no authority for the presentation of a contingent claim. The plain effect of the section is to ignore all claims *which are due*, unless such claims be presented as therein described; and the last clause of the section is simply a proviso, exempting claims not due and contingent claims from the operation of the first clause, and making a new provision for them, namely, that they may be presented within ten months after becoming absolute liabilities, or reaching maturity. But this does not do away with the necessity of presenting them to the executor after this

character attaches to them.'   Accordingly, it was held in that case that no action could be maintained against an executor upon a contingent claim until after it had been presented to the executor as a *matured absolute claim.* As if purposely and unmistakably to reverse the effect of this construction, section 1493 of the Code of Civil Procedure not only provided that ' *all* claims arising upon contracts, whether the same be due, not due, or *contingent, must be presented* within the time limited in the notice,' or barred forever, but entirely omits the proviso, in section 130 of the Probate Act, upon which the above construction was grounded, viz., that a contingent claim might be presented within ten months after it should become absolute; and there is now no provision in the code for the presentation of a contingent claim after the expiration of the period of ten months, except in case the holder of the claim was absent from the state, etc., and this exception applies alike to all claims, whether contingent or not.

"Section 131 of the Probate Act required every claim presented to be supported by an affidavit ' that the *amount is justly due,*' etc.   Such an affidavit could not truthfully be made in the case of a contingent claim before the happening of the contingency upon which the claim was to become due or absolute.   As if on purpose to remove this obstacle to the presentation of contingent claims, section 1494 of the code (substitute for section 131 of the Probate Act) requires the affidavit to be made only in case the claim ' is due,' and provides that ' if the claim be not due when presented, or be contingent, the particulars of such claim must be stated.'

" Section 1498 of the code, which is the same as section 134 of the old Probate Act, provides that when a claim is rejected, the holder must bring suit in the proper court, ' within three months after the date of its rejection, if it be then due, or within two months *after it becomes due,* otherwise the claim shall be forever barred.'

"In *Fallon* v. *Butler*, 21 Cal. 25, it was held that a mort-

gage lien was not a 'claim against the estate' of a de-
ceased person, within the meaning of the Probate Act,
which must be presented within the period prescribed
by the notice to creditors, or be barred; and in support
of this it was said (*arguendo*): 'Whatever signification,
then, may be attached to the term "claims," standing by
itself, it is evident that in the Probate Act it only has
reference to such debts or demands against the decedent
as might have been enforced against him in his lifetime
by personal actions for the recovery of money, and upon
which only a money judgment could have been ren-
dered.   In this sense a mortgage lien is not a claim
against the estate.'   One of the reasons assigned for this
construction of the Probate Act was, that a contingent
claim (assuming a mortgage lien to be such) could not
be supported by the affidavit required by section 131 of
that act, since a contingent claim could not become due,
nor could the *amount* thereof be known, before the con-
tingency happened.   But, as we have seen, this obstacle
has been removed by section 1494 of the Code of Civil
Procedure.   The decision in *Fallon* v. *Butler*, however,
is rested principally upon the ground that only those
'claims' upon which a personal money judgment may
be rendered are required to be presented for allowance,
without regard to whether they are 'due, not due, or
contingent.'   The mortgage in question in that case was
overdue, and might have been enforced two years before
the death of the mortgagor; but it was said that an ac-
tion for the enforcement of the mortgage was distinct
from an action to recover a money judgment on the
note secured by the mortgage.   It was not decided in
that case that it was unnecessary to present for allow-
ance an immature contingent claim upon which a money
judgment might be rendered after it should become due.
It was said, however, that the term 'claims' only referrd
to those demands upon which a money judgment might
have been rendered against the decedent *in his lifetime.*
Literally understood, perhaps, this would exclude from
the meaning of the word 'claims' all demands of every

kind which did not fall due until after the death of the decedent, even though a money judgment might be rendered upon them after they should become due; and it would follow, that claims upon promissory notes and other contracts for the direct payment of money not due until after the death of the testator need not be presented to the executor for allowance. It will hardly be contended that this was the intention of the learned justice who wrote the opinion in that case. Near the close of the opinion, however, the intention of the court is expressed more precisely, as follows: 'In the use of the term "claims," it [the legislature] intended to embrace only such demands or liabilities as might by action be reduced to simple money judgments, and to leave the enforcement of specific liens and equitable rights to the ordinary proceedings in the district courts.' This expresses all that could have been intended as to the meaning of the word 'claims.' Whether the claims were due, not due, or contingent, must have been considered immaterial to the decision. Moreover, the decision, such as it was, and particularly as to the construction of the word 'claims,' was doubted and limited to the exact facts of that case in *Ellis* v. *Polhemus*, 27 Cal. 350, wherein Mr. Chief Justice Sanderson, among other things, said: 'The meaning of the word "claim" is broad enough to embrace a mortgage or any other lien, and in section 186 of the act mortgages and other liens are expressly mentioned as valid claims against the estate; . . . . but if there was any doubt upon that point, it would seem to be removed by the language of section 133, which provides that "if the claim be founded on a bond, bill, note, or *other instrument*, the original shall be presented," etc.'

"The definition of the word 'claims,' given in *Fallon* v. *Butler*, 21 Cal. 25, was cited in *Estate of McCausland*, 52 Cal. 577, to the point that a proceeding for a family allowance by the widow is not an action or proceeding against an executor or administrator. Again, in *Estate of Swain*, 67 Cal. 641, the same definition is cited

to the point that a balance struck upon an account *may be presented* as a claim against an estate, since an action might have been maintained upon it against Swain in his lifetime. Again, in *Stuttmeister* v. *Superior Court*, 72 Cal. 489, the case of *Fallon* v. *Butler*, 21 Cal. 25, was cited in support of the proposition 'that the term "claim," as used in the code in reference to estates of deceased persons, has reference to such demands or debts against the decedent as existed and (*if due*) might have been enforced against him in his lifetime by proper action.' These are the only cases cited by counsel as affirming the case of *Fallon* v. *Butler*, 21 Cal. 25; yet none of them touch the point, even, that no claim need be presented except such as may be reduced to a money judgment, and certainly afford no support to the construction of the opinion contended for by counsel for appellants, to the effect that immature contingent claims, upon which, *when due*, a money judgment may be rendered, are not required to be presented to the administrator for allowance, and are not barred if not presented. To this extent, however, the law must be found to go to maintain the action at bar; for although the claim upon which it was brought is a contingent claim which did not become due or absolute until after the expiration of the period prescribed by the notice to creditors, it is, nevertheless, a claim upon which a money judgment may be rendered, and upon which such a judgment might have been rendered against Blythe in his lifetime, had it become due before his death.

" The decision in *Fallon* v. *Butler*, 21 Cal. 25, limited, as it has been, to actions to enforce mortgage liens in which no money judgment is sought, was affirmed, however, by the legislature in 1876, and made an exception to section 1500 of the Code of Civil Procedure as it theretofore stood, which, considered in connection with other sections of the code above quoted, seems very significant of the intention of the legislature to allow no other exception to the rule that 'no holder of any claim

against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator.' And this exception was probably enacted in deference to the decision in *Fallon* v. *Butler*, 21 Cal. 25, as limited in *Ellis* v. *Polhemus*, 27 Cal. 350.

" Counsel for appellants contend that. the term ' contingent claim,' as used in section 1493 of the Code of Civil Procedure, ' must be confined to existing claims, and cannot be extended to mere possibilities.'

" There seems to be very little room for controversy as to the meaning of the adjective 'contingent' or the noun 'contingency.' Webster defines the noun as follows: ' 1. The quality of being contingent or casual; the possibility of coming to pass. 2. An event which may occur; a possibility; a casualty.' And defines the adjective 'contingent' as follows: ' 1. Possible, or liable, but not certain, to occur; incidental; casual. 2. Dependent on that which is undetermined or unknown. 3. (Law.) Dependent for effect on something that may or may not occur.' The law dictionaries and the Century Dictionary give substantially the same definitions. Among those given in the Century Dictionary are the following: ' Not existing or occurring through necessity. Dependent upon a foreseen possibility; provisionally liable to exist, happen, or take effect in the future.' Indeed, the word ' possibility' is defined (in law) to be 'a contingency.' (See Webster, Bouvier, Burrill, and Anderson.) All anticipated future events which are not certain to occur are contingent events, and may properly be denominated ' mere possibilities,' more or less remote, while anticipated events which are certain to occur, or must necessarily occur, are in no degree contingent.

" Section 1493 of the Code of Civil Procedure distinguishes three classes of claims against an estate which must be presented: 1. Claims due; 2. Claims not due; and 3. Contingent claims. This implies that the mere fact that a claim is not due does not make it contingent. If the amount of the claim and the date at which it is

to become due are certain, it is not contingent, though not due. Therefore a contingent claim is not distinguished from other claims by the qualifying words 'not due,' but by the words 'not absolute,' as in sections 1648 and 1650 of the Code of Civil Procedure. A claim ceases to be contingent when it becomes absolute, though not yet due, as in the case of a contract to pay money six months after the future occurrence of a contingent event, in which the obligation becomes absolute six months before due; yet a contingent claim may become absolute and due at the same time.

"It is further contended for appellants that they had no existing claim against Blythe's estate which could have been presented during the period of ten months after publication of notice to creditors, since Blythe's liability to indemnify them did not become absolute or due until the contingency happened, two years after that period had expired.

"It is true that their claim was neither absolute nor due during that period, but it was, nevertheless, an existing valuable claim against the estate of Blythe, assignable, devisable, and descendible (*Kenyon* v. *See,* 94 N. Y. 563), and also detrimental to Blythe's estate. It consisted of a then existing obligation arising from an express covenant of the decedent to indemnify the appellants for one half of all damages they might suffer from water, etc., during the term of the lease. It was substantially a covenant of insurance.

"Counsel ask, What would have been the effect of an allowance of this claim by the administrator? A sufficient answer to this is, that an allowance of the claim would have admitted and established the validity of the obligation, and would have entitled it 'to be filed in court and ranked among the acknowledged debts of the estate, to be paid in due course of administration' (sec. 1497), 'as the circumstances of the estate required.' (Sec. 1647.) If still contingent at the time of the settlement of accounts, 'the amount thereof, or such part of the same as the holder would be entitled to if the

claim were due, established, or *absolute*, must be paid into the court, and there remain, to be paid over to the party when he becomes entitled thereto.' (Secs. 1648, 1650, 1651.)

" It is assumed by counsel for appellants that before the contingency happens the obligation is not a debt; and hence they conclude that it could not have been ' ranked among the acknowledged debts of the estate.'

" Conceding, for the sake of the argument, that a contingent claim is not a technical legal debt, it does not follow that it may not be ranked *among* debts.   The first two examples given by Mr. Webster of authorized uses of the verb ' to rank ' are as follows: ' Poets were *ranked* in the class of philosophers '; ' Heresy is *ranked* with idolatry and witchcraft.'   The first does not necessarily mean nor imply that poets are philosophers; nor the second that heresy is idolatry or witchcraft.   Nor does the requirement that an allowed claim shall be ranked *among* debts exclude from the ranks all claims which may not properly be termed legal debts.   The statute plainly requires contingent claims to be presented *for allowance;* and that all allowed claims shall be filed in court and ranked *among* the acknowledged (allowed) debts, whether all such allowed claims are technical debts or not.

" Section 130 of the Probate Act, and section 1493 of the code as first enacted, provided that 'if a claim is not presented within the time limited in the notice, it is barred forever, *except if it be not then due, or if it be contingent, it may be presented within ten months after it becomes due or absolute.'*   By the amendment of section 1493 of the code in 1880, this exception was omitted. This omission clearly shows it to have been the intention of the legislature not only that contingent claims should be presented *within* the prescribed period, but that if not presented within that period they should be barred forever.

" Appellants' counsel finally insist that the term ' contingent claim,' as employed in section 1493 of the Code

of Civil Procedure, cannot be so extended as to include a claim whose *amount* is contingent, and as authority for this refer to certain bankruptcy cases claimed to be analogous, most of which arose under the United States bankrupt act of 1841 (5 Stats. at Large, 444), the fourth section of which provided that the judgment or certificate of discharge of the bankrupt shall 'be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt *which are provable under this act.*' The fifth section provides for proving all kinds of contingent claims which may become absolute in the future; and that *when they become absolute* the present value thereof shall be ascertained 'under the direction of the court,' and allowed accordingly, 'as debts *in præsenti.*' In the cases cited, it was held that those claims whose *amounts* were contingent and uncertain were not provable under the act, and consequently that the bankrupt was not discharged from his obligation thereon. But even upon this point the bankrupt cases are conflicting. (See *Jemison* v. *Blowers*, 5 Barb. 692; *Haywood* v. *Shreve*, 44 N. J. L. 104.)

"I think the analogy of the bankrupt cases to the case at bar too remote to entitle the former to much, if any, weight as authorities in the latter, upon the point here under consideration. The principal object of the bankrupt act was to discharge insolvent *living* debtors from a part (not all) of their just debts and obligations, *as a matter of grace;* whereas the probate laws of this state propose to *enforce payment of all* just debts of *deceased* debtors, as matter *of strict justice.* The question decided in the bankrupt cases cited related to the construction of the bankrupt act of 1841, namely: Were contingent debts, the amounts of which could not be ascertained in the course of the proceedings, *provable and dischargeable* under that act? No such question is involved in this case. There is no doubt that *all* just contingent claims arising from contracts of deceased persons are provable against his estate at *some time* during the administration thereof, and must be paid, or in some mode secured in.

the course of administration. The sole question in this case is one of construction of the probate law of this state, namely: Does the probate law of this state require that all contingent claims *which are provable and payable at any time* shall ·be presented for allowance within ten months after publication of notice to creditors, as a condition precedent to the commencement of actions thereon ? A true answer to this question depends upon peculiar provisions of our Code of Civil Procedure, nothing analogous to which is to be found in the bankrupt act of 1841. Besides, no question analogous to this was decided in any of the bankrupt cases cited.

" Counsel for appellants have suggested difficulties in the way of providing for the payment or security of that class of contingent claims the amounts of which cannot be ascertained within the ordinary period of administration. Such difficulties have always been encountered, but generally, if not always, overcome. (See 2 Williams on Executors, 6th Am. ed., 1447–1453.) Where the limited jurisdiction of a distinct probate court has proved to be inadequate, the original jurisdiction of courts of equity over the administration of estates has been invoked. Our superior courts have both probate and equity jurisdiction, so that whenever, in the course of the administration and settlement of estates, our probate statutes are found to be inadequate to authorize and accomplish all that a court of equity is authorized to do in such cases, our superior courts may exercise their equity powers in connection with and as incidental to their powers in probate matters to the extent necessary to a complete administration and distribution of estates; provided, of course, that nothing be done in contravention of any statutory provision. (3 Pomeroy's Eq. Jur., sec. 1153.) As to the means and mode of procedure by which the payment or security of contingent demands are to be enforced, no question is involved in this case, except the question as to the necessity of their presentation for allowance within ten months after publication of notice to creditors. It is not denied that all just contingent

claims arising from contracts should be paid or provided for in the course of administration if our statutes have provided the requisite means and mode of procedure; and what has been said under this head is only intended to show that in this class of cases courts of equity have always had and exercised the power to protect and enforce contingent claims against the estates of deceased persons, and for this purpose have supplied the necessary means and modes of procedure, so far as not inconsistent with any statute; and that since our superior courts have all the powers of courts of equity, they may do likewise.

" In conclusion, it may be remarked that if contingent claims are not to be entirely ignored in the administration of estates, it is quite as important that they should be presented for allowance, as that absolute claims should be presented. Otherwise, how is any provision whatever to be made for them before the estate is settled? Timely notice of all claims which may prejudicially affect an estate should be given to the administrator, so that he may have an opportunity to investigate their merits, and to contest them, if advisable, before the evidence of their invalidity shall be lost. That they should be forever barred if not presented within the time prescribed by law is surely no greater hardship than that absolute claims should be so barred.

" I think the judgment should be affirmed.

" TEMPLE, C., and BELCHER, C., concurred."

Mr. Justice Harrison took no part in the foregoing decision.

Rehearing denied.