NELLIE KEEFE *vs.* NORFOLK SUBURBAN STREET RAILWAY COMPANY & another.

Suffolk.   January 19, 1904. — February 27, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Evidence.   Practice, Civil.   Damages.*

In an action against a street railway company for personal injuries, the defendant relied on a document purporting to be a release executed by the plaintiff. The plaintiff testified that she was induced to sign this paper by the fraud of a certain claim agent of the defendant, and was allowed against the objection of the defendant to state the portion of the conversation that she had with this claim agent which occurred after she had signed the paper. *Held,* that the admission of the evidence was not error, it being part of the conversation during which the paper was signed and having a bearing upon the plaintiff's good faith in alleging fraud.

On the argument of exceptions, the answer of a witness cannot be objected to as non-responsive, if at the trial the only objection to the testimony was on the ground that it was not admissible.

Whether the climacteric of an unmarried woman about forty years old may occur before she has recovered from the results of a street railway accident and thus prolong her suffering, was held on the evidence in this case to be a question of fact for the jury.

TORT, against the Norfolk Suburban Street Railway Company and the West Roxbury and Roslindale Street Railway Company, for personal injuries alleged to have been sustained by reason of the derailment of a car of the last named defendant, upon which the plaintiff was a passenger, at Hyde Park on the morning of January 30, 1900. Writ dated April 18, 1900.

At the trial in the Superior Court before *Harris*, J. it was admitted that the plaintiff was in the exercise of due care at the time of the accident, and the West Roxbury and Roslindale Street Railway Company introduced no evidence to show that the accident was not due to its negligence, but did not admit its liability.

That defendant contended and offered evidence to show that the plaintiff had released her claim against it by the execution of a certain paper which the defendant asserted to be a valid release, so that the plaintiff could not maintain an action against it, and denied that the plaintiff had sustained any serious injury by reason of the derailment. The plaintiff testified that her signature to the paper presented as a release was obtained from her through the fraud of one McAloon, a claim agent of the defendant, and that she signed the paper because McAloon told her that it would show the railway company that he had given her an order upon the physician to attend her. Her testimony as to the conversation with McAloon after her signing the paper, which was admitted against the objection of the defendant, was as follows: "After I signed the note he told me when I was all better to come down to Quincy, and he gave me his name and address, but I have forgotten it. He said he would settle all my claims. I have never been able to get that far and I have never seen him since. He knew where I lived but he never came to me."

The plaintiff introduced evidence tending to show that she would be forty years of age in March, 1903; that before the accident she had been a well, strong woman, but that since it occurred she had suffered more or less pain and discomfort, and had felt unable to work. The defendant excepted to the admission of the evidence described in the opinion as to the likelihood that the plaintiff's suffering would be prolonged if she should reach her climacteric before she recovered from the effects of the accident.

The jury returned a verdict for the plaintiff in the sum of $5,150 against the West Roxbury and Roslindale Street Railway Company, and returned a verdict for the other defendant, the Norfolk Suburban Street Railway Company. The West Roxbury and Roslindale Street Railway Company alleged exceptions.

*H. F. Hurlburt,* (*D. E. Hall* with him,) for the West Roxbury and Roslindale Street Railway Company.

*J. E. Cotter,* (*T. F. McAnarney* with him,) for the plaintiff.

HAMMOND, J.   1.  We think no error of law appears in the admission of the statements made to the plaintiff by McAloon in the same conversation in which she alleges she was fraudulently induced to sign the release, although they were made after she had signed it.  While it may be true that they could not have formed any part of the statements which induced her to sign, yet they were a part of the conversation during which the paper was signed and had a bearing at least upon her good faith in pressing the claim of fraud, and to meet the argument likely to be made by the defendant that this claim was an afterthought on her part.  It is argued by the defendant that this part of the plaintiff's testimony was not responsive to the question put to her.  It was certainly responsive to the question as originally put, and the colloquy between the two counsel does not show that her counsel ever withdrew that question; but, however that may be, the point that the answer was not responsive to the question was not then taken by the defendant, and it is manifest that the judge understood, and properly, that the objection of the defendant was based solely upon the ground that the testimony was not admissible.  The objection that it was not responsive cannot now be of avail to the defendant.

2.  At the time of the trial the plaintiff was thirty-nine years and eleven months old, and her contention was that, if she should reach her climacteric before she had fully recovered, her suffering might be prolonged as one of the results of the accident.  The defendant contended that upon the evidence the possibility that the plaintiff would reach her climacteric before her full recovery from the accident was so remote that it should not be considered by the jury as an element of damage; and at the close of the evidence asked the judge so to rule.  The judge declined to rule as requested, and submitted this question to the jury, with instructions to which we do not understand the defendant to object except so far as inconsistent with the ruling requested.  While the evidence tended to show that the average age of married women at the time the climacteric occurs is about forty-five or forty-six years, and of un-

married women a year or two earlier, yet it tended also to show that sometimes it occurred when the woman was only thirty years of age, and sometimes not until after she was fifty-five; and the physician who attended the plaintiff testified that she was at the age when the change of life might come, and " if that comes at the age of forty, as it oftentimes does with unmarried women, it may prolong her nervous condition and keep her from rapidly recovering her health." An expert physician called by the plaintiff testified that she was getting better now, and that it was " only a question of time when she will get well, provided the climacteric does not come on very soon," that this period in the case of an unmarried woman " is liable to come at forty years of age." Another expert called by the plaintiff testified that " if the change of life should develop within the course of the next two years I think that that would have a tendency to delay the recovery very much."

It is true that there was much testimony to show that, after all, the chances seemed to be against the occurrence of the climacteric until after full recovery; still, in view of all the evidence, it cannot be said as matter of law that the likelihood that the climacteric would not occur until after full recovery from the effects of the accident was so remote as to call for the instruction requested by the defendant. The whole question was one of fact for the jury. The remaining exceptions having been waived, are not considered.

*Exceptions overruled.*