SAMUEL F. TOWLE & another, executors, *vs.* SARAH DELANO & others.

Suffolk. Jan. 21. — Feb. 25, 1887. HOLMES & GARDNER, JJ., absent.

A testator by his will gave the residue of his estate to his brother D., upon the condition and subject to the charge of paying annually to the mother of the testator's two illegitimate daughters, "during her life," a certain sum, and a certain other sum annually to each of the daughters "so long as both they and their said mother shall all live," and, upon "the death of either" of the daughters, a larger annuity to the survivor "during the life of their said mother;" and further provided that, upon the death of each daughter, D. should pay to her surviving children a sum named, and that, if either daughter should die without leaving issue, D. "shall retain said sum to his own use." *Held*, that the testator's daughters were entitled to the annuities given by the will only during the life of their mother. *Held, also,* that, although one of the daughters was unmarried, and fifty-three years and nine months old, and her mother was dead, D. was not entitled to the fund given for the benefit of her issue.

PETITION IN EQUITY, filed June 7, 1879, under the St. of 1879, *c.* 125, by the executors of the will of David Miller, for the sale of certain lands for the payment of the charges and annuities created by the will of William Miller, the residuary clause of which was as follows:

"Fifth. I give, devise, and bequeath all the rest, residue, and remainder of my estate, real, personal, or mixed, of which I shall be seised and possessed, or to which I shall be entitled at the

time of my decease, to my said brother David Miller, to have and to hold the same to him, the said David Miller, his heirs and assigns forever, upon the condition nevertheless, and subject to the charges and payments following, viz.: that he or his executors, administrators, heirs, or assigns pay annually to Sarah Delano, mother of my two illegitimate children, Maria D. Miller and Almira D. Miller, all of Roxbury, during her life, the sum of two hundred dollars, and the sum of five hundred dollars annually to each of my above-named illegitimate daughters so long as both they and their said mother shall all live, and after the death of either of my said daughters, that he or they pay to the survivor of them, my said daughters, during the life of their said mother, the sum annually of six hundred dollars, and that on the death of my said illegitimate daughter Maria D. Miller, he or they pay to the children of her body, or child of her body if but one, and if more than one in equal shares and proportions, the sum of ten thousand dollars, to have and to hold the same to him, her, or them, to his, her, or their sole use and behoof forever. My meaning is, that the said sum of ten thousand dollars be paid to the child of her body if but one living, or, if more than one, that the said sum of ten thousand dollars be divided between said children, share and share alike. But if my said daughter shall die, and shall not leave a child living at the time of her death, that my said brother retain said sum of ten thousand dollars to his own use forever. And that on the death of my said daughter Almira D. Miller, that the said David Miller or his executors, administrators, heirs, or assigns pay to the child or children of her body the sum of ten thousand dollars, and, if there be more than one child then living, that said children shall receive equal shares or proportions of said sum of ten thousand dollars, to have and to hold the same to him, her, or them, to his, her, or their sole use and behoof forever. But in case my said daughter shall die leaving no child of her body alive, that my said brother shall retain said sum of ten thousand dollars to his own use."

The case was heard by *Devens*, J., and reported for the consideration of the full court, in substance as follows :

Portions of the lands originally in question in this cause have been sold from time to time, in accordance with interlocutory

decrees of this court, under direction of a special master and by consent of parties, and the annuities accruing under the fifth clause of William Miller's will up to May 1, 1885, have been paid from the proceeds of such sales, but the annuities accruing on May 1, 1886, have not yet been paid. About 99,000 square feet of land on Edgewood Street in the Roxbury district of Boston, of the value of $31,500, now remain unsold.

Sarah Delano, referred to in the fifth clause of said will of William Miller, died on June 27, 1886. Almira D. Miller, also referred to therein, is now named Almira D. Moore, is a widow, and has living issue, she being now fifty-one years old. Maria D. Miller, also referred to in said clause, is now aged fifty-three years and nine months, having been born in January, 1833, and has never been married, and has never had any child. At the hearing before me upon the question as to the terms upon which the unsold residue of the lands should be sold, the parties agreed that sufficient land should be sold to satisfy the unpaid annuities accruing up to the death of Sarah Delano on June 27, 1886.

There were further conflicting claims as to the proper construction of said fifth clause of the will of William Miller.

The petitioners contended that all the annuities ceased upon the death of Sarah Delano, and that, as Maria D. Miller had attained, in a childless and unmarried condition, an age at which a court of equity would adjudge her incapable of child-bearing, a final decree should now be made for the sale of sufficient land to produce the sum of $10,000, and no more; and that this sum should be placed in the hands of a competent trustee, to be appointed by this court, and to be held upon the following trusts:

1st. To invest the same in such securities as are defined by the law for the investment of the funds of savings banks, and to hold the same during the life of said Almira D. Moore, paying the net annual income in annual payments to the persons entitled to the land under the will of David Miller.

2d. Upon the decease of said Almira D. Moore, to divide said principal sum of $10,000 among the children of her body, upon the terms set forth in said fifth clause of the will of William Miller.

The respondents contended as follows:

1st. That, notwithstanding the death of said Sarah Delano, the annuities created by the will of William Miller for the benefit of his two illegitimate daughters continue during the life of each of said daughters respectively at the rate of $600 per annum for each.

2d. That it cannot now be determined, upon the foregoing facts, that no sum of $10,000 should be set apart for such child or children as may be hereafter born of the body of said Maria D. Miller.

3d. That sufficient land should be hereafter sold to satisfy said annuities, and to produce the sums necessary for the children of said Almira D. Moore, and the future children, if any, of said Maria D. Miller.

*M. Williams*, for the petitioners.

*F. I. Amory*, (*C. K. Fay* with him,) for the respondents.

DEVENS, J. The argument for the respondents Maria D. Miller and Mrs. Moore properly concedes that, without reference to other parts of the will, it might be urged that the clause relating to the daughters of the testator made no provision for them except during the lifetime of the mother. The residuum of the estate is devised and bequeathed to David Miller, upon the condition and subject to the charge of paying to the mother an income of $200 "during her life," to each of the daughters a certain income "so long as both they and their said mother shall all live;" and it then provides that, "upon the death of either" of the daughters, a larger annuity shall be paid to the survivor "during the life of their said mother." This is the only provision made for annuities to the daughters, who were not the testator's legitimate children, and nothing is found in it which indicates that the duration of the annuities bequeathed to the daughters extends beyond the life of the mother. On the contrary, an almost necessary construction of it limits them to this period.

Where the construction of a clause is difficult, on account of meagre, involved, or contradictory phraseology, the true meaning of the testator may be sometimes ascertained by examining other provisions. But, even if the clause in question could be held to be of this character, an examination of other portions of

the will does not reveal any intention to extend the annuities beyond the life of the mother.

He has given, by a subsequent clause, $10,000 to the children of either daughter, should she have children at her decease; and in the event of the death of either daughter without children, the will provides that David Miller "shall retain said sum of ten thousand dollars to his own use." The testator, perhaps, contemplated, as suggested on behalf of the daughters, that a fund of $20,000 would be required for carrying out his will in regard to the illegitimate branch of the family. But this sum of $10,000 is dealt with by the will independently of the provision made thereby for the incomes to the mother and daughters. Thus, if one of the daughters had deceased during the life of the mother, leaving children, while the income of the surviving sister would have been increased, the sum of $10,000 would be at once payable to her children. The testator has indeed made no gift in terms of the income of the $10,000, — which income might accrue after the death of the mother and before the death of a daughter surviving the mother, when the principal sum would become payable to the daughter's children, should she leave any, — but it is within the scope of the residuary clause; and it cannot be said that, because David Miller is then to retain the $10,000 to his own use, it therefore must be inferred that the annuity to the daughter should be continued during this period, because it would approximate to the interest of that sum, or that the testator has thus indicated any intention that David Miller shall not have its income or interest during this time.

That great latitude has been used in construing the words of a will where the intention of a testator could, from the whole context, be ascertained, is certainly true; but where a clause is in itself intelligible, and expressed in apt words, we cannot speculate on the motives which might have governed the testator, or conjecture that he has failed to express his intention, and then supply it. *Metcalf* v. *Framingham Parish*, 128 Mass. 370. It is impossible to read the clause, "so long as both they and their said mother shall all live," by supplying the words "during their respective lives." This would be to introduce words which contradict those which follow them, and thus to control the construction of the sentence by the words thus

introduced. The mother's annuity during life has been provided for by the previous clause. Even if the word " all " may sometimes be used in the sense of " each," when it follows the words " both they and their mother," the sentence is applied to the lives of all the three. The subsequent clause then provides for the contingency of one of the daughters dying before the mother.

We are therefore of opinion that a fund of $10,000 should be set aside to be paid to the children of Almira D. Moore at her decease, but that she and her sister are not entitled to the annuities after the death of the mother ; that the further sum of $10,000 should also be set aside for the future children of Maria D. Miller ; and that sufficient land may be sold for these purposes. Notwithstanding the age of Miss Miller, and the extreme improbability that she can hereafter have offspring, we are not prepared to say that this fund should now be liberated, although we are aware that, under similar circumstances, this has been done by the English court of equity, in the case of *In re Widdow's trusts*, L. R. 11 Eq. 408. See *Lovering* v. *Lovering*, 129 Mass. 97.                    *Instructions accordingly.*