COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* ETHEL MATHER BULLARD & another, trustees, (and a companion case between the same parties).

Suffolk.    December 4, 1939. — January 27, 1943.

Present: FIELD, C.J., DONAHUE, COX, & RONAN, JJ.

*Childbearing. Woman. Taxation*, Of income. *Evidence*, Presumptions and burden of proof. *Public Policy. Words*, "Remainder," "Contingency."

There is no "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life which precluded proof before the Appellate Tax Board by a nonresident woman who had no issue that it had become impossible for her to bear children so that, within § 10 (3) of G. L. (Ter. Ed.) c. 62, a "remainder presently vested" in her under a trust established under the will of a resident was "not subject to be divested" under the terms of the trust by the "contingency" of her bearing children, and income "accumulated . . . for the benefit of" such remainder was not taxable under § 10.

APPEALS from decisions by the Appellate Tax Board.

*E. O. Proctor*, Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*R. Wait*, (*L. H. Rhinelander* with him,) for the taxpayers.

FIELD, C.J.    Each of these cases is an appeal by the commissioner of corporations and taxation — hereinafter referred to as the commissioner — from a decision of the Appellate Tax Board abating a tax upon income from net gains from the sale of intangible personal property, in one case upon such income for the year 1935, and in the other case upon such income for the year 1936. G. L. (Ter. Ed.) c. 58A, § 13, as amended by St. 1933, c. 321, § 7; St. 1933, c. 350, § 8; St. 1935, c. 218, § 1; St. 1939, c. 366, § 1. See also St. 1937, c. 400, §§ 1, 4.

Louisa L. S. Bagg died a resident of the Commonwealth leaving a will that was duly allowed. The Probate Court for the county of Hampden appointed the two daughters of the testatrix, Ethel Mather Bullard and Louise de Rosales, successor trustees under the will. No copy of the will is set forth in the record, but with respect to its provisions and related matters the Appellate Tax Board found that by the will "the testatrix gave the residue of her estate in trust to pay from the income thereof specific sums annually to certain persons, and the balance of the income in equal shares to her two daughters, the present successor trustees. On the death of each daughter her share of the income is to be paid to her issue by right of representation for twenty-one years, and at the end of that period her one half of the principal is to be paid to said issue. Upon the death of one without issue the survivor is to receive the whole of the income for life. On the death of the survivor the will provides in clause 11 (g) that so much as is not needed to carry out the provisions of the trust created is to be paid to certain charitable corporations named in a memorandum left with the will. This provision was declared void by decree of the Probate Court. Both daughters, who are the trustees as well as life beneficiaries, were, and now are nonresidents of Massachusetts. Neither is married, nor have they any issue. . . . The testatrix has no other heirs at law."

The income taxes here in question were assessed upon the trustees under the will upon the excess of gains over losses resulting from the sale of intangible personal property by them in the years in question respectively. It is not controverted that, although for the purposes of trust accounting such net gains were principal gains, for the purposes of income taxation they constituted income for the year in which such net gains were made. *Commissioner of Corporations & Taxation* v. *Baker*, 303 Mass. 606, 610. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1, 2–3. The question for determination is whether, under the governing statute, such income was taxable.

By § 5 (c) of G. L. (Ter. Ed.) c. 62, as appearing in St.

1935, c. 481, § 1, it is provided that "The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum." By § 8 it is provided that "The following income shall be exempt from the taxes imposed by this chapter: . . . (d) Such part of the income received by trustees or other fiduciaries as is payable to or accumulated for persons not inhabitants of the commonwealth." Section 10 provides in part as follows: "The income received by estates held in trust by trustees or other fiduciaries under the will of a person who died an inhabitant of the commonwealth or under a trust created by a person who was either at the time of the creation of the trust or at any time during the year for which the income is computed an inhabitant of the commonwealth, any one of which trustees or other fiduciaries is an inhabitant of the commonwealth or has derived his appointment from a court of the commonwealth, shall be subject to the taxes imposed by this chapter to the extent that the persons to whom the income from the trust is payable or for whose benefit it is accumulated are inhabitants of the commonwealth. Income so received and accumulated for unborn or unascertained persons or persons with uncertain interests shall be taxed as if accumulated for the benefit of a known inhabitant of the commonwealth to the following extent: (1) Where all or any one of the trustees or other fiduciaries have derived their appointment from a court of the commonwealth or are required to account to a court of the commonwealth, the whole amount of income thus accumulated shall be taxed. . . . (3) . . . For the purposes of this section . . . income shall be deemed to be accumulated for unborn or unascertained persons or persons with uncertain interests when thus accumulated by estates, by trustees or other fiduciaries, who are subject to the provisions of this section . . . , for the benefit of any future interest other than a remainder presently vested in a person or persons in being not subject to be divested by the happening of any contin-

gency expressly mentioned in the instrument creating the trust."

The general scheme of the statute as applied to future interests in a trust, where, as here, the trustees "have derived their appointment from a court of the commonwealth," is that (a) income accumulated for the benefit of persons who are inhabitants of the Commonwealth during the year in which it is accumulated is subject to taxation, but (b) such income accumulated for persons who are not such inhabitants is not subject to taxation. "The person for whom income is 'accumulated,' however, is not necessarily the person to whom this income will actually be payable by the trustee when the time for such payment arrives. It is 'accumulated,' within the meaning of the statute, for the person or persons who, at the time it is accumulated, have the present right to receive in the future the income so 'accumulated,' that is, the person or persons having the future interests therein." *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1, 4. Where, however, the persons having such future interests are uncertain or their interests are uncertain, that is, where the income is accumulated "for unborn or unascertained persons or persons with uncertain interests," such income is treated as if accumulated "for the benefit of . . . known inhabitant[s] of the commonwealth." And income is "deemed to be accumulated for unborn or unascertained persons or persons with uncertain interests" when it is accumulated "for the benefit of any future interest other than a remainder presently vested in a person or persons in being not subject to be divested by the happening of any contingency expressly mentioned in the instrument creating the trust."

The basic inquiry in the present cases is, therefore, whether the two daughters of the testatrix, at the time the income taxed was accumulated, had a remainder or remainders of the kind so described. The decision of the Appellate Tax Board was based on the ground that the interest or interests of the daughters in the principal of the trust fund constituted such a remainder or remainders. We think that, on

the facts found, the decision was right and consequently that the taxes assessed were rightly abated.

1. The interest or interests of the daughters of the testatrix in the principal of the trust fund constituted a remainder or remainders "presently vested in . . . persons in being" within the meaning of the governing statute. The commissioner, indeed, makes no contention to the contrary.

On the facts found, the principal in the trust fund after the life interests created by the will was not disposed of by the will in the event that neither of the daughters of the testatrix, who were given life interests in the trust fund, has issue. (The provision of the will disposing of the remainder in the trust fund in that event has been held to be invalid.) Neither of the daughters has issue. Consequently the principal of the trust fund, subject to the life interests therein created by the will, passed to these two daughters in equal shares as intestate property. During the period in which the income here involved accumulated, the daughters were "persons in being." And their interests in the principal of the trust fund, though future interests because enjoyment thereof is postponed, were then "presently vested." These interests in the common law sense — as applied to future interests in personalty — are reversions rather than remainders and consequently are vested interests. Gray, Rule Against Perpetuities (4th ed.) §§ 11, 113, 113.1, 283. Though it has been said that the words of G. L. (Ter. Ed.) c. 62, § 10 (3), were used in the primary common law sense — though not restricted to interests in land — *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1, 4–5, — clearly they were not intended to be used in such a strict common law sense that the word "remainder" would not include a "reversion" having like qualities to a remainder though created in a different manner. The interest or interests of the daughters, therefore, constituted a remainder or remainders "presently vested" within the meaning of the statute.

2. The remainder or remainders vested in the daughters of the testatrix were not "subject to be divested by the

happening of any contingency expressly mentioned in the instrument creating the trust."

It is true that the instrument creating the trust — the will of the testatrix — expressly mentions a contingency in the case of each daughter upon the happening of which that daughter's future interest in the principal of the trust fund, presently vested, will be divested, that is, her death leaving issue or, at least, having had issue. (In view of the conclusion here reached it is not necessary to consider the nature or extent of the interests of such issue if any should be born, though apparently the issue of one daughter would take an interest in only one half of the principal even if the other daughter died without issue.) But though the contingencies of either or both of the daughters of the testatrix leaving or having had issue are expressly mentioned in the instrument creating the trust, the future interest of a daughter in the principal of the trust is not "subject to be divested" by the happening of such a contingency if such contingency cannot happen in any event. Indeed, it is not a true "contingency." The term "contingency" implies the possibility of happening. A contingency is something that may or may not happen — not something that cannot happen. See *Jemison* v. *Blowers,* 5 Barb. S. C. 686, 692; *Verdier* v. *Roach,* 96 Cal. 467, 474. Mere mention of a "contingency" in the instrument creating the trust, if such "contingency" cannot happen in any event, is not a ground for the imposition of a tax. "Tax laws are to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form." *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston,* 308 Mass. 1, 6.

The decisions of the Appellate Tax Board were based on the ground that the contingencies expressly mentioned in the will cannot happen. The Appellate Tax Board, after finding that neither of the daughters of the testatrix has issue, found "on all evidence that it is a fact that neither can bear children." Unless as matter of law this finding of fact was erroneous or cannot rightly be considered in deciding the cases, the remainder or remainders in the trust fund

presently vested in the daughters of the testatrix at the time the income here involved was accumulated were not "subject to be divested" and the income accumulated for the benefit of these future interests was not taxable since the daughters were not inhabitants of the Commonwealth when this income was accumulated.

The ultimate finding that neither of the daughters can bear children was based on "all evidence," and such evidence is reported only as it is set forth in the following findings of subsidiary facts: "Ethel Mather Bullard [one of the daughters] was born April 14, 1883, and in 1935 was fifty-two years of age. On April 4, 1932, because of multiple fibroids, a hysterectomy operation was performed on her, and there was undisputed medical evidence that it is quite impossible for her to bear children. Louise de Rosales [the other daughter] was born on May 25, 1873, and in 1935 was sixty-two years of age. There was undisputed medical evidence that the menopause was complete at the age of forty-seven, and that she is not capable of bearing a child."

The contention of the commissioner is that it was not open to the Appellate Tax Board to make the ultimate finding of fact that, as of the time when the income accumulated, neither of the daughters could ever thereafter bear children, and, incidentally, that medical testimony was not admissible to prove the incapacity of either of the daughters to bear children because of age or surgical operation, but that "there is an irrebuttable presumption" or a rule of substantive law "that women are capable of bearing children as long as they live, and that therefore the remainders are subject to be divested by the contingency of issue being born to either one of the life tenants, so that income accumulated therefor is taxable under [G. L. (Ter. Ed.) c. 62] § 10."

Whether the principle relied on by the commissioner is better described as an "irrebuttable presumption" or as a rule of substantive law is not important for the determination of the present cases, whatever may be its importance in the interest of accurate thinking or clear statement. The result as applied to these cases is the same, however the principle may be described. See 9 Wigmore, Evidence (3d

ed.) § 2492; *Heiner* v. *Donnan*, 285 U. S. 312, 328–329, 335; *United States* v. *Provident Trust Co.* 291 U. S. 272, 283. No contention is here made that there is not, at least, a true presumption that a woman is always capable of bearing children, and the question whether or not there is such a true presumption requires no consideration.

The existence of an "irrebuttable presumption" or rule of substantive law, however the principle may be described, that a woman is always capable of bearing children has been recognized as applied to certain classes of cases since early times — since Lord Coke and, indeed, since Littleton. In Blackstone's Commentaries, book 2, chapter 8, II, it is stated in discussing an estate tail after possibility of issue extinct, citing Lit. § 34, Co. Lit. § 28, that where land is given to a man and his wife and the heirs of their two bodies, a "possibility of issue is always supposed to exist, in law, unless extinguished by the death of the parties; even though the donees be each of them an hundred years old." In the section of Coke on Littleton cited, it is stated that "if a man giveth land to a man and his wife, and to the heires of their two bodies, and they live till each of them be an hundred yeeres old, and have no issue, yet do they continue tenant in taile, for that the law seeth no impossibilitie of having children." The statements by Littleton, Coke and Blackstone here referred to only purport to apply the principle in question to estates tail after possibility of issue extinct.

The principle that as matter of law a woman is capable of bearing children throughout her life has been applied since early times with only occasional exceptions in determining questions of remoteness under the rule against perpetuities. *Jee* v. *Audley*, 1 Cox Ch. 324. *In re Dawson*, 39 Ch. D. 155. *Exham* v. *Beamish*, [1939] Ir. R. 336, 347–351. Gray, Rule Against Perpetuities (4th ed.) §§ 215, 215.1 and cases collected in note 4. Undoubtedly the overwhelming weight of authority supports the application of this principle to the determination of such questions. This court in *Lovering* v. *Lovering*, 129 Mass. 97, though not expressly stating this principle, seems to have recognized

that it was so applicable. In that case the testator by his will gave property in trust, the income to be paid to his daughter Nancy Gay during her life, and upon her death to her children during their lives, and, as such children should successively decease, the principal "to be paid and distributed to and among the heirs at law of all the children of said Nancy." At the death of the testator Nancy Gay was fifty-five years old. There is nothing in the record other than her age bearing upon the possibility of her having children thereafter. In fact, she had no such children. The court said (page 100): "It is true that it was not probable that Mrs. Gay would have after-born children; but it was possible, and the question of remoteness must be determined with regard to possible events, and not to those which actually or may probably occur. We are, therefore, of opinion that the limitation over to the heirs at law of the children of Mrs. Gay is in violation of the rule of law against perpetuities, and is void." Though we do not imply that the principle invoked is not sound as applied to the determination of a question of remoteness in accordance with the overwhelming weight of authority elsewhere, the weight of *Lovering* v. *Lovering* as authority for this principle is somewhat lessened by the fact brought out in the later case of *Dorr* v. *Lovering*, 147 Mass. 530, arising under the same will, that the possibility of Nancy Gay's having children was not actually involved in the earlier case. In the later case it was pointed out (page 532) that in the earlier case "counsel for the grandchildren conceded that, if after-born children [of Nancy Gay] were included in the devise, the limitation over to the heirs of the children of Nancy Gay was void for remoteness. The court therefore did not discuss this question, but, accepting the concession of the counsel, considered only the questions argued by him." In the later case the court, while doubtless recognizing the soundness of the principle invoked in the earlier case, actually held that the "legal heirs of each child [of a child of the testator], upon his death, take his share of the estate; and as the devise to the heirs takes effect at the death of their ancestor who had the life estate, it follows that in the

case of all the children who were living at the death of the testator the devise over is not void for remoteness," saying, however, that in the case of a child born after the death of the testator to a child of the testator — a case that was not before the court — "the devise over would be invalid; but this would not affect the distinct devises in favor of the heirs of . . . [the] brothers or sisters" of such after-born child who were themselves born in the lifetime of the testator. The court added: "We are compelled to the conclusion that the concession of counsel and the decision of the court in *Lovering* v. *Lovering* . . . [129 Mass. 97], to the effect that the gifts over to the heirs at law of the children of Nancy Gay were void for remoteness, are erroneous." Page 536. Thus the decision in *Lovering* v. *Lovering* really depended upon the actual fact as to the birth of children to Nancy Gay after the death of her father, the testator, rather than upon the possibility of her bearing children thereafter.

The only other case in this court brought to our attention that may seem to recognize the principle that as matter of law a woman is capable of bearing children throughout her life is *Towle* v. *Delano*, 144 Mass. 95. Yet that case did not necessarily recognize this principle to its full extent. In that case the testator by his will gave the residue of his estate to his brother subject to the provision that he, his executors, administrators, heirs or assigns pay certain amounts to the mother of the testator's illegitimate children and to such illegitimate children, two daughters, and to the further provision that, on the death of each illegitimate daughter, he, his executors, administrators, heirs or assigns pay to the children of such illegitimate daughter the sum of $10,000, but if she left no such children the brother should retain such sum for his own use. After the deaths of the brother and of the mother of the illegitimate daughters, the question arose as to the sum to be retained by the executors of the will of the brother to meet the latter provision. The daughter Almira D. Moore then had children living. The daughter Maria D. Miller was then "aged fifty-three years and nine months . . . has never been

married, and has never had any child." Page **97.** It does not appear that there was other evidence relating to the possibility of Maria D. Miller's bearing children or that any attempt was made to introduce such evidence. The court held that the executors should be instructed not only that a sum of $10,000 should be set aside for the children of Almira D. Moore, but also that the further sum of $10,000 should be set aside for the future children of Maria D. Miller. The court said (page 100), citing *Lovering* v. *Lovering,* 129 Mass. 97: "Notwithstanding the age of Miss Miller, and the extreme improbability that she can hereafter have offspring, we are not prepared to say that this fund should not be liberated, although we are aware that, under similar circumstances, this has been done by the English court of equity, in the case of *In re Widdow's trusts,* L. R. 11 Eq. 408." The question decided in *Towle* v. *Delano* was similar to, if not identical with, the question whether a trust should be terminated on facts such as appeared therein. In its decision the court relied upon a case (*Lovering* v. *Lovering,* 129 Mass. 97, already discussed herein) in which the court considered a question of remoteness under the rule against perpetuities. Though the court apparently recognized no distinction in principle between the two classes of cases, it is to be observed that in some other jurisdictions a distinction has been taken. See cases collected in Gray, Rule Against Perpetuities (4th ed.) § 215.1, note 4; cases collected in notes 48 L. R. A. (N. S.) 873–874, 67 Am. L. R. 548, 549.

Considering particularly the case of *Towle* v. *Delano,* it is to be noticed that, whatever the implications of the decision therein, the court did not state expressly the proposition that, even in a case of the nature of that case, a woman was to be regarded as capable of bearing children throughout her life and evidence would not be admissible to show the contrary. It does not appear that such evidence was offered. Obviously the court did not lay down this proposition as one of universal application in all types of cases. Moreover, the facts upon which that case was decided were different from those in the present cases. Miss Miller,

the woman whose capacity for childbearing was in question in *Towle* v. *Delano,* was many years younger than Mrs. de Rosales, one of the women involved in the present cases, and so far as appears there was no medical testimony with respect to Miss Miller, as there was with respect to Mrs. de Rosales in the present cases, that "the menopause was complete" years before "and that she is not capable of bearing a child." So also, though Miss Miller was somewhat older than Mrs. Bullard, the other woman involved in the present cases, there was no evidence with respect to Miss Miller, as there was with respect to Mrs. Bullard in the present cases, that a "hysterectomy operation" had been performed on her, and there was no medical testimony, as there was with respect to Mrs. Bullard, that it was "quite impossible for her to bear children." The questions whether such evidence could have been received and what effect, if any, could be given to such evidence, if received, upon the matter for decision, do not appear to have been raised in *Towle* v. *Delano.* The decision of that case turned on the age of Miss Miller — fifty-three years nine months — and the "extreme improbability" of a woman of that age bearing children. Neither the decision of the case nor the language of the opinion requires the conclusion, as applied to that type of case, that there is an "irrebuttable presumption" or rule of substantive law that, irrespective of the actual fact, a woman is to be regarded throughout her life as capable of bearing children or even of being so capable at the age of Miss Miller. The decision could as readily have been supported on the ground of a true presumption of capacity for childbearing not met by evidence. The court used neither the language of an "irrebuttable presumption" nor its equivalent nor the language of a true presumption. But the court expressly declined to follow an English case (*In re Widdow's Trusts,* L. R. 11 Eq. 408) which was decided on the ground of a presumption that a widow aged fifty-five years four months, who had never had any children, and a spinster aged fifty-three years nine months, would not have any children.

The decisions in other jurisdictions where the propriety

of terminating a trust for the unborn children of a designated woman was involved are conflicting as to whether there is an "irrebuttable presumption" or rule of substantive law that a woman is to be regarded as capable of bearing children throughout her life irrespective of the actual fact. See cases collected in Scott on Trusts, § 340.1, notes, and in 67 Am. L. R. 539–541, 548–549. Upon this subject it is stated in Am. Law Inst. Restatement: Trusts, § 340, comment e: "The existence of a contingent interest which it has become certain will never vest does not preclude the termination of the trust. . . . If the unascertained beneficiaries are the children of a designated woman, and the woman is beyond the age of childbearing or otherwise physically incapable of bearing children, the court may terminate the trust." In Scott on Trusts, § 340.1, it is said: "A more difficult question arises where there is a contingent disposition in favor of the children of a woman who can be shown to be incapable of bearing children, either on account of her age or because of her physical condition. Will the trust be terminated if the only objection to its termination is the provision in favor of such unborn children? The cases are divided on this point. In some cases the courts have said that as long as a woman lives it will be conclusively presumed that she is capable of bearing children. The reasons which the courts give for adopting as a conclusive presumption what is undoubtedly untrue in fact are various. It has been suggested that the inquiry involves elements of indecency; but of course this is absurdly prudish. It has been suggested that where the alleged disability is due to a surgical operation, there would be a temptation to women to have such an operation performed for the purpose of terminating the trust, and that it would be against public policy to encourage unnecessary operations for such a purpose. The danger that a woman would submit to such an operation for such a reason is surely negligible, although the argument would have more force where the operation is performed without the consent of the woman. Perhaps the real reason is the distrust of the court of medical testimony, and the fact that it not infrequently happens that the pre-

dictions of physicians and surgeons turn out to be not well founded. This would be a sufficient reason for refusing to terminate the trust in the absence of very clear and definite evidence that the woman is incapable of bearing children. If there is no dispute as to the possibility of bearing children, there seems no sufficient reason for refusing to terminate the trust, and some courts have taken this view. If the court has any lingering doubt as to the possibility of the birth of children, it can require that security be given to restore the property if a child should be born."

The question whether there is an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life irrespective of the actual fact may arise in cases of different types from those already discussed, such as, for example, cases involving the distribution of property other than upon the termination of a trust and cases involving the marketability of a title that is subject to a limitation in favor of unborn children of a designated woman. See cases collected in Gray, Rule Against Perpetuities (4th ed.) § 215.1, note 4; cases collected in notes 48 L. R. A. (N. S.) 868–872, 874–875, 67 Am. L. R. 541–546, 549–551. Upon this subject — except as the question may arise under the rule against perpetuities — it is stated in Am. Law Inst. Restatement: Property, Future Interests, § 274: "(1) When a limitation purporting to create a remainder or an executory interest is in favor of a person whose birth is, or becomes, impossible because of either the death, physical condition or advanced age of a required parent, such limitation has no effect thereafter (a) to prevent or to delay the distribution of an estate or fund; or (b) to prevent or to delay the termination of a trust; or (c) to prevent specific performance of a contract for the sale of land which is the subject matter of such limitation; or (d) in the determination of the amount of an estate tax payable by the estate of the maker of such limitation. (2) A man or woman is presumed capable of having children, but, for the purposes included within subsection (1), this presumption can be rebutted by relevant evidence as to such person and by past experience concerning births to persons

of like age and physical condition." In comment c on sub-section (1) clause (d) it is said: "A statute which taxes the privilege of succession rather than the privilege of disposition may require each interest so taken to be separately valued. In applying any such statute, an interest limited to take effect upon the death of a designated person without issue is valued in accordance with the probability or improbability of such person having issue. Consequently, a rule analogous to that stated in this Section applies to such a situation."

It is, of course, not necessary to determine the extent to which the principle that there is an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life is applicable to cases other than the cases that are now before the court for decision. Neither is it necessary to determine the extent to which the statements herein quoted from the American Law Institute Restatements and from Scott on Trusts would be followed in cases within the scope of such statements, or even to determine the precise weight of the *Lovering* cases and *Towle* v. *Delano* as authorities in the classes of cases with which they deal. It is clear, however, that this court has never laid down expressly or by implication the general proposition applicable to all kinds of cases that there is an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life. And it is clear — at least in cases not within the same classes as the *Lovering* cases and *Towle* v. *Delano* — that there is a field for free decision. Whether the principle that there is such an "irrebuttable presumption" or rule of substantive law is applicable to any particular class of cases must depend upon the nature of the cases.

The commissioner invokes this principle for the purpose of taxation, particularly for the purpose of imposing an income tax, where, if the actual facts could be shown, there would be no such tax. As already stated, however, "Tax laws are to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form." *Commissioner of Corporations & Taxation* v.

*Second National Bank of Boston,* 308 Mass. 1, 6.   And it is not to be assumed in the absence of clear statutory language that the Legislature intended to base the imposition of a tax upon a fiction any more than it intended to base exemption from a tax upon a fiction.   See *Boston* v. *Quincy Market Cold Storage & Warehouse Co.* 312 Mass. 638, 654.

There is nothing in the apparent purpose of the governing statute or in its language indicating a legislative intention that the actual fact with respect to capacity for childbearing cannot be shown when it is material upon the issue of tax liability.   The fundamental purpose of the statute, as disclosed by its language, as already pointed out, is to impose an income tax upon income accumulated for residents of the Commonwealth and to impose no such tax upon income accumulated for nonresidents, but in the case of future interests, where it is uncertain whether the income is accumulated for residents or for nonresidents, that is, where the future interests of persons in the accumulated income are "uncertain interests," to treat the accumulated income as accumulated for residents and consequently taxable.   Where the uncertainty as to the persons for whom the income is accumulated rests solely on the possibility that children may be born in the future and as matter of fact there is no such possibility, it is not within the fundamental purpose of the statute to impose a tax upon such accumulated income.   There is nothing in this fundamental purpose that imports that the actual fact with respect to such possibility cannot be shown.   On the contrary, this fundamental purpose would be subverted if this actual fact could not be shown.   Moreover, the subject is not dealt with specifically in the statute, and no principle that a woman is capable of bearing children throughout her life irrespective of the actual fact can be read into the statute on the ground that the statute is to be construed in the light of the preexisting state of the law.   See *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374; *Walsh* v. *Commissioners of Civil Service,* 300 Mass. 244, 246; *Worcester* v. *Springfield,* 310 Mass. 217, 220.   No such principle of general application has been declared by this court.   Nor is there any such

principle of general application uniformly declared in other jurisdictions. That the preëxisting state of the law furnishes no ground for reading such a principle into the statute is true of the specific language thereof, whereby an uncertain future interest is defined by the process of exclusion as "any future interest other than a remainder presently vested in a person or persons in being not subject to be divested by the happening of any contingency expressly mentioned in the instrument creating the trust." There is nothing in this language importing that the fact that a contingency cannot happen is not a proper subject of proof by evidence, even though such contingency is a woman's bearing children.

The issue determinative of taxability or nontaxability is, of course, whether the happening of the contingency, by the happening of which a vested remainder will be divested, is *possible* or *impossible*. The issue is not whether the happening of the contingency is *probable* or *improbable*. The contingency exists so long as it is *possible* for it to happen. The situation presented is, therefore, somewhat different from the situation where the value of a future interest subject to being divested by the happening of a contingency is involved. That value may be affected unfavorably or favorably by the probability or improbability that the contingency will happen. But the probability or improbability of the contingency happening does not affect the existence of the contingency. So long as the contingency exists a vested remainder subject to being divested by the happening thereof is an uncertain interest within the meaning of the statute and comes within the class of taxable interests. The underlying question to be decided in these cases with respect to each of the daughters of the testatrix having a vested remainder in the residue of the estate of her mother is whether the possibility of the happening of the contingency that would divest such vested remainder, that is, the possibility of such daughter bearing children, may be inquired into as matter of fact or, on the contrary, such inquiry is precluded by an "irrebuttable presumption" or rule of substantive law that throughout her life such daugh-

ter, irrespective of the actual fact, is capable of bearing children.

The statement that the issue to be determined, if an inquiry into the actual fact is permissible, is the possibility — not the probability — of a daughter bearing issue does not import that the ordinary rule of proof — where no special degree of proof is required — is inapplicable, that is, the rule that the fact to be established must be shown to be more probable than any contrary fact. *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250. Proof of the greater probability that it is impossible for a woman to bear children, however, is a very different matter from proof of the greater probability that she will not actually bear children. Proof of the latter fact would not be material under the governing statute since it would not negative the existence of the contingency upon the happening of which the vested remainder would be divested.

The present cases do not involve an "irrebuttable presumption" or rule of substantive law to the same effect created by statute. Compare *Schlesinger* v. *Wisconsin*, 270 U. S. 230; *Heiner* v. *Donnan*, 285 U. S. 312. Whether there is an "irrebuttable presumption" or rule of substantive law applicable to the present cases that a woman is capable of bearing children throughout her life depends upon general principles of law. This court, however, has never decided, or even stated, that there is such an "irrebuttable presumption" or rule of substantive law applicable to all kinds of cases or to cases of the nature of the present cases. Nor is the conclusion that there is such an "irrebuttable presumption" or rule of substantive law supported by way of analogy by anything in the cases, already discussed, in which the matter has been touched upon by this court. The scope of the decisions and statements in these cases was very limited. And it may well be that there are reasons for such an "irrebuttable presumption" or rule of substantive law in such cases that do not exist in cases of the nature of the present cases where neither title to property nor its custody is affected. The decisions elsewhere in more or less analogous cases, which are by no means uniform, fur-

nish no substantial basis for the conclusion that there is such an "irrebuttable presumption" or rule of substantive law applicable generally or in cases of the nature of the present cases. It would serve no useful purpose to cite and analyze these varying decisions. On the other hand, the statements in the American Law Institute Restatements applicable to a wide variety of cases more or less analogous to the present cases, to the effect that the possibility of a woman bearing children is a proper subject for inquiry as matter of fact, are highly persuasive of the proposition that there is no "irrebuttable presumption" or rule of substantive law applicable generally or in cases of the nature of the present cases. Moreover, in cases of high authority closely analogous to the present cases, the possibility of a woman bearing children has been held to be a proper subject of inquiry as matter of fact not precluded by any "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life. *United States* v. *Provident Trust Co.* 291 U. S. 272. *City Bank Farmers' Trust Co.* v. *United States*, 74 Fed. (2d) 692.

If there is an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life precluding inquiry as matter of fact, it must rest either on the ground that the impossibility of a woman bearing children is a fact of such a nature that it is not susceptible of proof by evidence or on the ground of an extrinsic policy overriding the policy of ascertaining the truth by all available means. In the latter aspect — if not also in the former — such an "irrebuttable presumption" or rule of substantive law is, in effect, a rule of exclusion of evidence. With respect to such rules of exclusion on the ground of extrinsic policy it is said in 1 Wigmore, Evidence (3d ed.) § 11: "These rules concede that the evidence in question has all the probative value that can be required, and yet exclude it because its admission would injure some other cause more than it would help the cause of truth, and because the avoidance of that injury is considered of more consequence than the possible harm to the cause of truth."

See also *United States* v. *Provident Trust Co.* 291 U. S. 272, 284–285.

Doubtless the theory of an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life originated, in part at least, in the idea that the contrary fact of the impossibility of a woman bearing children is not susceptible of proof by evidence of sufficient probative value, so that the matter rests in the field of conjecture. Such an idea might not unnaturally be held before the modern development of medical science. And even since such development it is not without merit where the only evidence is that the woman is somewhat beyond the usual age of childbearing. Compare, however, *City Bank Farmers' Trust Co.* v. *United States*, 74 Fed. (2d) 692. But in the light of the modern development of medical science — a matter, as a general proposition, of common knowledge — it would be shutting the eyes to the obvious to conclude that in no circumstances could there be evidence of sufficient probative value to prove that a particular woman was not capable of bearing children. See *United States* v. *Provident Trust Co.* 291 U. S. 272, 285. It is not the impossibility of proof in general but rather the sufficiency of proof in a particular case that is now significant. The principle of an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life cannot now be supported rationally on the ground of the impossibility of proof of the contrary fact by evidence of sufficient probative value. Indeed, the commissioner, while contending for such a principle as matter of substantive law based upon reasons of public policy, concedes that, if "stated as a conclusive presumption of fact, it is patently absurd in the light of modern scientific knowledge."

If the existence of an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life is to be recognized in any particular class of cases, it must be because of some extrinsic policy applicable to such cases that inquiry as matter of fact into the possibility of a woman bearing children would "injure

some other cause more than it would help the cause of truth." No such extrinsic policy has been declared by the Legislature with respect to cases of the nature of the present cases, and we think that there is no such extrinsic policy that can properly be relied on by the court as matter purely of judicial decision to preclude inquiry as matter of fact into the possibility of a woman bearing children.

It has been suggested that evidence tending to show the impossibility of a woman bearing children, particularly medical testimony in the nature of expert opinion, is too unreliable to be made the basis of a finding of such impossibility, since later events may demonstrate that the opinion was erroneous. But such opinion evidence may be based upon physical facts that in the present state of medical science make possible a high degree of certainty of the correctness of the opinion and take it out of the field of mere conjecture. Indeed, there may be physical facts that, without the aid of expert opinion, furnish a reliable basis for a finding that childbearing is impossible for the woman whose capacity to bear children is a material issue in the case. Whatever may be true in cases involving title to property or its preservation for possible future owners with respect to the necessity of absolute certainty as to the impossibility of a woman bearing children, or with respect to the necessity of a specially high degree of proof of that fact, we perceive no reason in extrinsic policy, where the question involved is liability to income taxation, for requiring a higher degree of proof of the impossibility of a woman bearing children — a fact that must now be recognized as susceptible of proof — than is ordinarily required in the determination of issues of fact. Ordinarily, in the determination of issues of fact, opinion evidence, material to those issues, of competent medical experts based upon physical facts may be considered, even though it involves an element of prediction and there is a possibility that such opinion may turn out to have been mistaken. *Fournier* v. *Zinn*, 257 Mass. 575, 576. No reason is apparent why the Commonwealth in collecting income taxes should not be subject to the same risk of possibility of error as are litigants generally.

The situation in such cases is unlike the situations in some more or less analogous cases where an alternative to determination of the fact as to the possibility of a woman bearing children is to await the event that will determine whether she actually bears children.   In income tax cases arising under G. L. (Ter. Ed.) c. 62, § 10, there is no such alternative, and the alternative sought by the commissioner to a determination of the fact as to the possibility of a woman bearing children, in accordance with ordinary principles of proof, is the present imposition of a tax irrespective of what may actually happen in the future.   The scales are heavily weighted against a taxpayer by the statute by imposing a tax where there is a mere possibility that a woman will bear children.   "Taxation is an intensely practical matter . . . ." *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 212. *City Bank Farmers' Trust Co.* v. *United States,* 74 Fed. (2d) 692, 694.   It would be going too far to hold as matter of judicial decision without statutory basis that the scales should be further weighted against the taxpayer by requiring a higher degree of proof that it is impossible for a particular woman to bear children than is ordinarily required for the proof of facts where other practical matters are involved.

The commissioner contends that it "would seem desirable for the sake of simplicity and certainty in administration that there be a single rule applicable alike to the determination of estates and their taxability."   This contention assumes that in determining the nature of estates there is an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life.   However, no such principle applicable generally in the determination of the nature of estates is established in this Commonwealth, whatever may be true with respect to certain particular classes of cases.   But even if the assumption were correct, it would not follow necessarily that this general principle should be applied in determining liability to income taxation.   The argument of the commissioner has the aspect of an argument for symmetry in the law, but, however attractive such symmetry may be, other consider-

ations cannot be disregarded in an attempt to attain it. See *Oliveria* v. *Oliveria*, 305 Mass. 297, 299. The argument is in form an argument for a single rule in the interest of simplicity and certainty in determining the nature of estates and in determining liability to taxation. It is not apparent, however, that the application of a different rule in cases of income taxation from the rule applied in the determination of the nature of estates would, merely by reason of the difference in the rule, interfere seriously with the administration of the tax laws. The substance of the commissioner's argument is that the principle of an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life, precluding inquiry as matter of fact, would make for simplicity and certainty in the administration of the income tax laws. But it would do so at the expense of ignoring actual facts materially affecting liability to income taxation. Liability to taxation ordinarily depends upon the actual facts, sometimes facts of a complicated nature, and the administration of the tax laws requires the determination of these facts, sometimes a matter of great difficulty. In most, if not in all, situations it would make for simplicity of administration — if not for certainty — to ignore facts material upon the issue of liability to taxation. Obviously no principle of ignoring actual facts material in determining liability to taxation could be applied generally in the interest of simplicity and certainty of administration. The impossibility of a woman bearing children is a material fact in the determination of income tax liability under G. L. (Ter. Ed.) c. 62, § 10. The difficulty of proving this fact by evidence of sufficient probative value is not so great as to justify ignoring this fact and precluding inquiry with respect thereto in the interest of simplicity and certainty in the administration of the income tax laws.

It is urged, however, by the commissioner that an inquiry into the matter of the possibility of a particular woman bearing children is so contrary to the "natural compulsion of reticence and modesty" that such an inquiry ought not to be permitted for the purpose of determining

liability to taxation, particularly when it is against the wishes of the woman whose capacity for childbearing is involved that the inquiry be made. The matter clearly is not of such a nature that inquiry with respect thereto can fairly be regarded as offensive to public decency. Matters equally or more objectionable on this ground are commonly the subject of inquiry in legal proceedings when material to the determination of legal rights. See *Keefe* v. *Norfolk Suburban Street Railway*, 185 Mass. 247; *S——* v. *S——*, 192 Mass. 194; *Rudnick* v. *Rudnick*, 288 Mass. 256. And the matter, however decided, has no sinister implications. There are many matters of a personal or intimate nature that, though without sinister implications, persons naturally and properly do not wish to have made the subject of inquiry, but with respect to which inquiry in the interest of truth must be made in legal proceedings for the determination of the rights of these persons or of other persons. We think that with respect to an inquiry into the matter of the possibility of a woman bearing children, when material to the determination of tax liability, the interest of "reticence and modesty" does not outweigh the interest of truth. No question arises directly in the present cases with respect to the propriety of an inquiry into the capacity of a woman to bear children when such an inquiry would be against her wishes. In the present cases the inquiry is sought by the women whose capacity for childbearing is involved — who are both the trustees of the residue of the estate of their mother, the testatrix, and the owners of a vested remainder or vested remainders therein, upon whom the ultimate liability for the income tax, if any, would fall — and the "natural compulsion of reticence and modesty" is championed by the commissioner for the purpose of imposing an income tax. The situation frequently, if not usually, would be different in that the person seeking the inquiry would not be the woman whose capacity to bear children is involved. And it might happen that an inquiry would be against the wishes of such woman. If, however, as we do not intimate, there is any reason for precluding such an inquiry where it is against

the wishes of the woman whose capacity for childbearing is involved, it is more properly a reason for an exception to a general rule permitting such an inquiry than for a general rule precluding such an inquiry even though such woman wishes it. Compare *Sibbach* v. *Wilson & Co. Inc.* 312 U. S. 1, 6, 16. She ought not to be denied the benefit of such an inquiry for the protection of her legal rights for the reason that other women might not wish such inquiries to be made.

The suggestion has been made in cases cited by the commissioner — though the point apparently is not now pressed by him — that to permit inquiry as to the possibility of a woman bearing children might lead to evasion by her of legal consequences that otherwise would follow by subjecting herself to a surgical operation that would preclude the bearing of children. It is unlikely that the risk to the tax structure of the Commonwealth from the possibility of such conduct would be serious. But, more fundamentally, such conduct would not constitute evasion of taxation in the true sense. Taxation is based upon facts. It is common knowledge that not infrequently changes in the basic facts affecting liability to taxation are made for the purpose of avoiding taxation. Where, however, such changes in the basic facts are actual and not merely simulated, although made for the purpose of avoiding taxation, they do not constitute evasion of taxation. As was said by the Supreme Court of the United States, speaking by Mr. Justice Holmes, in *Bullen* v. *Wisconsin*, 240 U. S. 625, 630–631: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law." Both the letter and the policy of the law imposing taxes upon income accumulated for the benefit of a "future interest other than a remainder presently vested in a person or persons in being" not a resident or residents of the Commonwealth, "not subject

to be divested by the happening of any contingency expressly mentioned," are met by a change in the actual fact so that the vested remainder is no longer, as matter of fact, "subject to be divested by the happening" of a contingency, as in the case of a contingency of the birth of children that has become impossible of happening, irrespective of the manner in which and the purpose for which the change in the actual fact was brought about. There is nothing in the governing statute showing a legislative intention to prevent the avoidance of tax liability by such a change in the actual fact with respect to the possibility of the birth of children as would place a case upon the side of the line that is safe from such liability.

The conclusion that for the purposes of G. L. (Ter. Ed.) c. 62, § 10, the possibility of the birth of children to a woman can be inquired into as matter of fact and is not precluded by an "irrebuttable presumption" or rule of substantive law that a woman is capable of bearing children throughout her life is supported by the decision and reasoning of the Supreme Court of the United States in *United States v. Provident Trust Co.* 291 U. S. 272, although the cases are not exactly parallel.

The *Provident Trust Company* case arose under a statute of the United States whereby an estate tax was imposed upon the net estate of decedents. Revenue Act of 1918, c. 18, §§ 400–410, 40 U. S. Sts. at Large, 1096–1101. This statute provided that for the purposes of the tax the value of the net estate of a decedent should be determined by making certain deductions from the value of his gross estate including a deduction of the "amount of all bequests . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes . . . ." § 403 (a) (3). The decedent whose estate was involved in this case died in 1921 leaving a will by which he gave the remainder of his estate to a trustee in trust to pay the income thereof to his daughter for her life and upon her death without issue to distribute the principal among certain designated charitable institutions within the class of exempt corporations. At the time

of the death of the decedent his daughter was fifty years old. About seven years before his death she had undergone a surgical operation for the removal of her organs of reproduction. The trial court had found specifically that after "the operation she could not have become pregnant nor could she have given birth to a child." *United States* v. *Provident Trust Co.* 291 U. S. 272, 280.

The court recognized that, in making a deduction for an interest passing to charitable corporations under the statute quoted, "the value thereof must be determined from data available at the time of the death of decedent." Page 281. The government had contended that, "in view of the restriction in respect of issue contained in the will, the value could not be thus determined, since the law, without regard to the fact, conclusively presumes that a woman is capable of bearing children as long as she lives; and that this presumption controls where the organs of reproduction have been completely removed and inability to bear children admits of no valid dispute, no less than where the question turns upon the circumstance of age alone, or upon conflicting evidence or medical opinions." Page 281.

The court discussed the history and nature of this so called conclusive or "irrebuttable" presumption (pages 281–285), stated that the "rule in respect of irrebuttable presumptions rests upon grounds of expediency or policy so compelling in character as to override the generally fundamental requirement of our system of law that questions of fact must be resolved according to the proof" (pages 281–282), referred to the modern developments of medical knowledge (pages 281–283), and stated with respect to the presumption invoked that "not only do we perceive no grounds of expediency or policy that call for its hard and fast application to a particular physical condition, when ignorance has been supplanted by knowledge so as to put beyond the range of doubt the destructive effect of that condition upon the capacity for childbearing, but we conclude affirmatively that the policy of the statute under review as applied to the case in hand is quite to the contrary." Page 285. The court accordingly held with respect

to the question of the "value of the interest to be saved from the tax" that this question was "not concluded by the presumption invoked but [was] to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry" (page 286), in other words as matter of fact.

This decision of the *Provident Trust Company* case rested upon the fact of a surgical operation, "the inevitably destructive effect of which upon the power of procreation," according to the statement of the court, "is established by tangible and irrefutable proof" (page 285), but the reasoning of the court was not so limited.  And a broader application of the reasoning was made by the Circuit Court of Appeals for the Second Circuit in *City Bank Farmers' Trust Co.* v. *United States*, 74 Fed. (2d) 692.  That case arose under a provision for deduction from the value of the gross estate of the decedent of the value of bequests to or for the use of charitable corporations contained in the Revenue Act of 1924, c. 234, § 303 (a) (3), 43 U. S. Sts. at Large, 305, 306, like that under the earlier statute involved in the *Provident Trust Company* case.  The case involved a gift of property to a trustee in trust to pay the net income thereof to a woman fifty-nine years of age at the time of the testator's death and to pay over the principal of the trust to her issue or in default of issue to a hospital, an exempt charitable corporation.  There was no suggestion that the woman having the life interest had undergone a surgical operation. The court, however, considered the present state of medical knowledge with respect to the likelihood of a woman of the age of the life tenant bearing children, stated that "every dictate of reason and common sense justifies us in treating the gift to the issue of the life tenant as practically inoperative and the gift over to the hospital as a remainder indefeasibly vested" (page 693), and said with respect to any conclusive presumption that a woman was capable of bearing children throughout her life: "We find no authorities which require such a fantastic presumption of law to be applied in matters of taxation, where a bequest to a

charitable corporation is subject to no doubt or contingency but is by all rules of experience and science bound to occur." Page 694. With respect to the *Provident Trust Company* case the court said (page 694): "We see no essential difference between the real nature of the facts of that case and those before us here. In each case the conclusion depended on the accuracy of the data and the correctness of the scientific conclusions. Certainty is just about as great in one as in the other. We ought not to make an exemption in aid of charitable gifts depend on considerations that are wholly unreal and illusory." The court held that the "value of the bequest to the hospital may fairly be deducted in calculating the net amount of the estate for purposes of taxation." Page 693. See also *Ninth Bank & Trust Co.* v. *United States*, 15 Fed. Sup. 951. A contrary result was reached under a like statute by the Circuit Court of Appeals for the First Circuit in *Farrington* v. *Commissioner of Internal Revenue*, 30 Fed. (2d) 915, certiorari denied 279 U. S. 873, where the woman whose capacity for childbearing was involved was fifty-two years old. But the court was divided, a majority relying upon the presumption that a woman is capable of childbearing throughout her life, and the dissenting judge taking the position that Congress intended the statute with respect to the deduction of bequests to charitable corporations "to be construed in the light of the shown truth." Pages 916–917. This case, however, was decided before the *Provident Trust Company* case was decided, and its authority is greatly shaken, if not actually destroyed, by that decision.

We see no sound ground for any distinction, with respect to the propriety of an inquiry into the capacity of a woman for childbearing, between cases arising under the estate tax laws of the United States and the present cases arising under the income tax law of the Commonwealth. The arguments against the propriety of such an inquiry based upon considerations of "reticence and modesty" and of the danger of evasion of taxation are no stronger in one class of cases than in the other. The argument in favor of such an inquiry as matter of fact on the ground that the inquiry would tend to carry out the fundamental policy of the

statute is as strong with respect to the income tax statute as with respect to the estate tax statutes; the policy of the former statute of imposing no tax upon income accumulated for the benefit of persons not inhabitants of the Commonwealth is as clearly disclosed as the policy of the latter statutes to exempt from taxation bequests to or for the use of charitable corporations. Moreover, though there is a technical difference between the issues to be determined in estate tax cases and in income tax cases, that difference has no real significance with respect to the propriety of an inquiry as matter of fact into the capacity of a woman to bear children. In estate tax cases the issue to be determined is the effect upon the value of an interest in property of the existence of the contingency of the birth of children, and, conceivably, improbability of the birth of children, short of impossibility, might be material upon this issue, though the decisions in the *Provident Trust Company* case and in the *City Bank Farmers' Trust Company* case are largely, if not wholly, directed to impossibility. Compare, however, *Humes* v. *United States*, 276 U. S. 487, 494, where the matter was merely speculative. On the other hand, the issue to be determined in income tax cases is the actual existence of a contingency, the happening of which would divest a vested remainder, and the effect of the existence of such a contingency on the value of the vested remainder is immaterial. So also is the improbability, short of impossibility, of its happening. The existence of the contingency can be negatived only by the fact that it is impossible for such a contingency to happen. But the fact that it is impossible for the contingency of the birth of children to happen is susceptible of proof by evidence of sufficient probative value, even though it may be more difficult to prove such impossibility than to prove that there is a high degree of improbability that children will be born. This greater difficulty of proof furnishes no adequate reason for distinguishing the income tax cases from the estate tax cases and precluding inquiry in the former cases as matter of fact into the question of the possibility of a particular woman bearing children.

It follows from the previous discussion that the Appellate Tax Board in the present cases was right in inquiring as matter of fact into the question of the possibility of the birth of children to each of the daughters of the testatrix, Mrs. Bullard and Mrs. de Rosales. The Appellate Tax Board upon such an inquiry made the ultimate finding that "neither can bear children." The next logical step would be to decide whether, since the matter was a proper subject for inquiry by the Appellate Tax Board, this ultimate finding was vitiated by error of law. But the commissioner properly makes no such contention, and the subject, therefore, requires no discussion.

In view of the ultimate finding of the Appellate Tax Board of the impossibility of either Mrs. Bullard or Mrs. de Rosales bearing children, their vested remainder or remainders were "not subject to be divested by the happening of any contingency expressly mentioned in the instrument creating the trust," and consequently income accumulated for the benefit of such future interest or interests was not subject to the income tax.

Therefore, the decision of the Appellate Tax Board granting an abatement in each of the present cases was right. In the case relating to income for the year 1935 abatement was granted in the amount of $1,826.58, including interest upon the amount of the tax to the date of payment thereof, and in the case relating to income for the year 1936 abatement was granted in the amount of $2,321.01, also including interest upon the amount of the tax to the date of payment thereof. The correctness of these amounts is not questioned. Costs in each case are awarded against the commissioner. As was pointed out in *Flint* v. *Commissioner of Corporations & Taxation*, 312 Mass. 204, 213, no specific order for repayment of the tax and interest paid or for payment of interest from the date of payment of the tax and costs is required, since the matter is covered by statute. G. L. (Ter. Ed.) c. 58A, § 13, as amended; c. 62, § 46, as amended.

In the case relating to income for the year 1935 abatement is granted in the amount of $1,826.58 with costs, and

in the case relating to income for the year 1936 abatement is granted in the amount of $2,321.01 with costs.

*So ordered.*